DECISION AND JUDGMENT ENTRY
{¶ 1} Anne Hammer appeals the decision of the Lucas County Court of Common Pleas granting summary judgment to Helen McKinnis in a tort case.
 {¶ 2} Anne Hammer, Helen McKinnis, Mary Shroyer and Dennis Harris lived on Fairfax Road in Toledo, Ohio. Mary and Helen were next door neighbors. On July 6, 2001, Anne and Dennis went to Mary's house so she could drive them over to cut the lawn at Anne's mother's house. Arriving at Mary's, Anne and Dennis saw that her empty garbage cans were sitting on the curb by her driveway. Anne suggested that they take the garbage cans to the rear of the house where Mary kept them. Mary's car was in the driveway and, because the lots in the neighborhood were narrow, Anne had to walk on Helen's yard next door to get around the car. Anne stepped into a hole on Helen's property and fell, breaking her right ankle.
 {¶ 3} Anne Hammer and her husband filed a complaint against Helen McKinnis. On October 15, 2003, Helen moved for summary judgment, which the trial court granted. The trial court determined that Anne was on Helen's property without permission or knowledge. It also noted that the duty to warn a licensee about a hidden danger was predicated upon the owner's knowledge of that individual's entering the property. Anne raises the following assignment of error on appeal:
 {¶ 4} "The trial court erred in not finding Anne Hammer to be a licensee on the property of Helen McKinnis and misinterpreted a property owner's duties to licensees."
 {¶ 5} A review of the trial court's granting of summary judgment is de novo; thus, we apply the same standard as the trial court. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt (1996),75 Ohio St.3d 280, 294. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 111.
 {¶ 6} To establish an action in negligence, a plaintiff must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77, citing Di Gildo v. Caponi (1969), 18 Ohio St.2d 125.
 {¶ 7} In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. See, e.g., Gladon v. Greater Cleveland Regional Transit Auth.
(1996), 75 Ohio St.3d 312, 315; Shump v. First Continental-RobinwoodAssoc. (1994), 71 Ohio St.3d 414, 417. Ohio still uses the common-law classifications of invitee, licensee, and trespasser to define the scope of the legal duty that the landowner owes the entrant. Gladon, supra. "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Id. A licensee is a person who enters the premises of another by permission or acquiescence, for his own pleasure or benefit, and not by invitation. Light v. Ohio University (1986), 28 Ohio St.3d 66, 68. Finally, one who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience is a trespasser. McKinney v. Hartz Restle Realtors, Inc.
(1987), 31 Ohio St.3d 244, 246.
 {¶ 8} A landowner owes a duty to exercise ordinary care to an invitee. Provencher v. Ohio Dept. of Transp. (1990), 49 Ohio St.3d 265,266. For a licensee or trespasser, however, the landowner owes no duty of care, except to refrain from willful, wanton or reckless conduct. SeeGladon, supra. at 317; McKinney, supra. at 246; Light, supra. at 68-69;Soles v. Ohio Edison Co. (1945), 144 Ohio St. 373, paragraph one of the syllabus. "Willful conduct `involves an intent, purpose or design to injure.'" McKinney, 31 Ohio St.3d at 246, quoting Denzer v. Terpstra
(1934), 129 Ohio St. 1, paragraph two of the syllabus. "Wanton conduct occurs when one `fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result * * *.'"McKinney, 31 Ohio St.3d at 246, quoting Hawkins v. Ivy (1977),50 Ohio St. 2d 114, syllabus.
 {¶ 9} In addition, a licensee is owed an extra duty of protection in that a licensee must be warned of hidden dangers, pitfalls or obstructions. Hannan v. Ehrlich (1921), 102 Ohio St. 176, 185-86. Moreover, if the landowner knows of the presence of such danger, the licensee must be alerted to any danger, which the landowner should reasonably believe that the licensee will not discover. Wiley v. Natl.Garages, Inc. (1984), 22 Ohio App.3d 57, 62; see, also, Salemi v.Duffy Construction Corp. (1965), 3 Ohio St.2d 169, paragraph two of the syllabus.
 {¶ 10} In this case, it is clear that Anne was not an invitee. She went onto Helen's property not to benefit Helen, but rather to benefit the next door neighbor, Mary. Therefore, the question is whether Anne was a licensee or a trespasser.
 {¶ 11} When the plaintiff's status depends on the resolution of conflicting evidence, it is a question for the finder of fact; however, in a case where the relevant facts are undisputed, the determination of the plaintiff's status is a legal question for the court. Wiley,22 Ohio App.3d at 62, quoting 62 American Jurisprudence 2d (1972) 274, 275, Premises Liability, Section 39.
 {¶ 12} It is undisputed that Mary, Helen's neighbor, had a license to be on Helen's property. Anne argues that there is no evidence that the license was limited to just Mary and that it did not include Mary's guests. In her response to requests for admissions and interrogatories, Helen denied knowing that anyone, other than Mary would regularly walk on her property along Mary's driveway. Upon this denial, Anne was required to show there was a material issue of fact that a license had been created for Mary's guests by either Helen's implied consent or permission.
 {¶ 13} Anne argues that she was a licensee by acquiescence. InSeeholzer v. Kellstone, Inc., this court stated "It is well recognized that acquiescence by a landowner in the public use of the premises can amount to a permission or license, thereby elevating the entrant's status from that of trespasser to license and that continued tolerance of the presence of trespasser can amount to acquiescence." Seeholzer v. KellstoneInc. (1992), 80 Ohio App.3d 726, 734 citing Wills v. Frank HooverSupply (1986), 26 Ohio St.3d 186, 190, fn. 1. The Ninth Appellate District has also noted "Implied consent may be interpreted from acquiescence to continued use of the property by the public." Easterlingv. Am. Olean Tile Co., Inc. (1991), 75 Ohio App.3d 846, 853. In bothSeeholzer and Easterling, the implied consent of the property owner was arguably established when the property owner was aware that the land was frequently used by the general public for riding recreational vehicles and took no active measures to halt the activity.
 {¶ 14} The evidence in this case, however, falls short of establishing continued use of Helen's property by the public. In her deposition, Mary stated that she stepped on her next door neighbor's yard to get in and out of her car and that there were times when she walked on Helen's property to get to the rear of her house. In both of her affidavits, Mary also stated that because most houses on Fairfax are close, if a car is parked on the driveway anybody going from the front of a house to the back must walk alongside the car and on the next door neighbor's property. Although Dennis testified at his deposition that a year before Anne's fall he would "usually take those garbage cans up for [Mary] quite a bit," there was no testimony that Helen, herself, was aware of or should have been aware of this activity. Also, there is no evidence that Mary's guests, visitors, or contractors frequently walked from the front to the rear of her house along Helen's property. In fact, Anne stated in her deposition, "I never walked in that area other than taking her garbage can. I had no reason to be in that area." Unlike Seeholzer andEasterling, there is no indication that the general public made frequent or common use of Helen's property.
 {¶ 15} Anne contends that Dennis testified there was a "beaten path" in the area of the fall which establishes public use. Dennis, however, actually disagreed with the characterization of a "beaten path." He stated, "the grass would be down but not like a dirt path or anything of that sort." Dennis believed the condition of area was due to normal walking, but did not state who actually walked along that area. There is also a problem with this testimony. The picture Harris was shown was taken over three months after the event. He did not state that the condition of the property in the picture was substantially the same as at the time of Hammer's fall.
 {¶ 16} We, therefore, conclude that Anne was not a licensee by acquiescence.
 {¶ 17} Second, Anne argues that she was a gratuitous licensee. A gratuitous licensee is "A licensee whose presence upon the land is solely for the licensee's own purposes, in which the possessor has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general or local custom." Stempuzis v. Hildebrand, 10th Dist. No. 03AP-86, 2003-Ohio-6060, at ¶ 20 quoting Garrard v. McComas (1982), 5 Ohio App.3d 179, 181; See also, Scheibel v. Lipton (1951), 156 Ohio St. 308, 311-312. Anne again relies on Mary's affidavits to say stepping on a neighbor's property is necessary if a car is in the driveway. These statements do not establish that it is the general custom of the neighborhood to park in the driveway or establish a general custom that people walked to the rear rather than the front of the house they were visiting. We, therefore, conclude that Anne was not a gratuitous licensee.
 {¶ 18} Because Anne was not a licensee, the only duty that Helen owed to Anne was to refrain from willful or wanton misconduct. There is no allegation that Helen engaged in willful or wanton misconduct; therefore, Helen did not breach any duty owed to Anne.
 {¶ 19} Even if Anne was a licensee, summary judgment was still appropriate. A licensee takes his license subject to its attendant perils and risks. Hannan, supra. at 185. It may further be said that the licensor owes a licensee no duty except to refrain from wantonly or willfully injuring him, and that he should exercise ordinary care after discovering a licensee to be in peril. Id. at 185-186. Although there are material issues of fact concerning the existence of a hole and whether any hole constituted a hidden danger, the possessor of the premises must warn the licensee of such danger when there is reason to believe that the licensee does not know of or will not discover the dangerous condition.Wieber v. Rollins (1988), 55 Ohio App.3d 106, 108; Niebes v.Crestline Aerie No. 859, Fraternal Order of Eagles (1952),94 Ohio App. 21, 30. There is no evidence that Helen was aware that Anne was on her property. Therefore she did not breach a duty of ordinary care because she did not discover Anne to be in any danger.
 {¶ 20} Anne, however, relies heavily on the last part of the fourth paragraph of the syllabus of Hannan which states "[licensees] should not be exposed to hidden dangers, pitfalls or obstructions." This statement was explained in Chadwick v. Ohio Collieries Co. (1928),31 Ohio App. 311, 316: "When the Hannan case recognizes possible liability for pitfalls and obstructions, we conclude that it means such pitfalls, etc., as are due to the active negligence of the licensor, and that a mere failure to do something that might obviate the danger to the licensee creates no liability. The hidden dangers, pitfalls, and obstructions, referred to in the Hannan case, that might result in liability to the licensee, consequently mean dangers of that character arising through the active, and not the passive, negligence of the licensor." The Ninth Appellate District agreed with this reasoning and stated that "* * * the bare licensee, knowing that the owner has no interest in his visit, and, therefore, cannot be expected to have made special preparations for his coming, will be on the alert to discover for himself the true condition of the premises." Elliman v. Gombar (1949),86 Ohio App. 352, 356. No one alleges that the hole was created by any active negligence of Helen; she, therefore, did not breach any duty owed to Anne.
 {¶ 21} We find the sole assignment of error is not well-taken. The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to appellant, Anne Hammer.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Arlene Singer, J., Judith Ann Lanzinger, Judges.
Concur.