[Cite as *Lowe v. Local Union No. 14 U.A.W.*, 2020-Ohio-703.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Patricia Lowe, et al.

Appellants

v.

Local Union No. 14 U.A.W., et al.

Appellees

Court of Appeals No. L-19-1042

Trial Court No. CI201703709

**DECISION AND JUDGMENT**

Decided: February 28, 2020

* * * * *

Pamela A. Borgess, for appellants.

Robert J. Bahret and Andrew J. Ayers, for appellee Local Union
No. 14 UAW.

Julia R. Bates, Lucas County Prosecuting Attorney, Kevin A. Pituch
and Elaine B. Szuch, Assistant Prosecuting Attorneys, for appellee.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} In this appeal, appellants, Patricia and Gene Lowe, appeal the judgment of

the Lucas County Court of Common Pleas, granting summary judgment in this premises

liability action in favor of appellees, Local Union No. 14 U.A.W. (the "union") and

Lucas County Board of Elections (the "BOE"). Because we find that the trial court properly concluded that appellants' claim was precluded under the open-and-obvious doctrine, we affirm.

## A. Facts and Procedural Background

{¶ 2} On August 11, 2017, appellants filed a complaint with the trial court, in which they alleged that Patricia sustained two fractured wrists that required surgical repair and rehabilitative therapy as a result of a fall that occurred as she was entering her polling place on November 3, 2015. According to the complaint, the fall occurred at the union's hall, located at 5413 Jackman Road, Toledo, Lucas County, Ohio, which was utilized as a polling place by the BOE under a contract with the union.

{¶ 3} Regarding the cause of Patricia's fall, appellants alleged:

> As [Patricia] was entering and before she could even realize, the top
> of her shoe got caught underneath the entry floor mat that had been placed
> over the top/edge of the inclining ramp located immediately upon entry
> behind the entry doors, causing her to fall.

{¶ 4} In their complaint, appellants asserted a claim for negligence based upon the allegation that appellees failed to maintain the premises in a reasonably safe condition and breached their duty to Patricia as a business invitee. Appellants alleged that the hazardous placement of the floor mat behind a closed entry door was not discernible by Patricia in her exercise of ordinary care. Moreover, appellants claimed that appellees' placement of the mat was either negligent or willful, wanton, and reckless.

2.

{¶ 5} On August 24, 2017, the union filed its answer to appellants' complaint, in which it denied any liability with respect to Patricia's fall. Likewise, the BOE denied any wrongdoing in its answer, which was filed on September 7, 2017. In its answer, the BOE asserted several affirmative defenses, including sovereign and statutory immunity.

{¶ 6} The matter proceeded through pretrial discovery, during which deposition testimony was elicited from several witnesses, including appellants. The depositions were filed with the trial court and are part of the record on appeal.

{¶ 7} On July 13, 2018, the BOE filed a motion for summary judgment, in which it argued that it was statutorily immune from suit as to appellants' negligence claims. Alternatively, the BOE asserted that it was not negligent, and any dangerous condition that existed in this case was open and obvious.

{¶ 8} One week later, on July 20, 2018, the union filed its motion for summary judgment, in which it contended that it owed Patricia a duty merely to refrain from willfully or wantonly causing her injury because she was a licensee, not a business invitee. Claiming that the record contained no evidence of such willful or wanton conduct, the union insisted that it was entitled to summary judgment. The union went on to argue that it was entitled to summary judgment even if Patricia was considered a business invitee. The union insisted that it had no duty to warn Patricia of any danger associated with the floor mat that appellants alleged was the cause of Patricia's fall, as the mat was an open and obvious condition.

3.

**{¶ 9}** On July 25, 2018, appellants filed their motion for partial summary judgment, in which they argued that Patricia was a business invitee to whom appellees owed a duty of care, the incline of the entryway and the placement of the floor mat did not conform to certain building codes and laws regulating polling places, and the nonconforming floor mat and incline were the cause of Patricia's fall. As such, appellants asserted that they were entitled to summary judgment on the issues of liability and causation, leaving only the issue of damages remaining.

**{¶ 10}** On February 21, 2019, the trial court issued its decision on the parties' competing motions for summary judgment. In its decision, the trial court found, among other things, that the floor mat on which Patricia allegedly tripped was an open and obvious condition. Based upon that finding, the trial court concluded that appellees had no duty to alert Patricia to the floor mat, and thus appellants' premises liability claims were not sustainable. Consequently, the trial court granted appellees' motions for summary judgment, and denied appellants' motion for partial summary judgment. Thereafter, appellants filed their timely notice of appeal.

### B. Assignments of Error

**{¶ 11}** On appeal, appellants present the following assignments of error for our review:

> I. The trial court erred in granting summary judgment to defendants/appellees where, at a minimum, questions of material fact exist

as to causation & whether the hazardous & non-compliant polling place entry was open & obvious to voter Lowe.

II. The trial court erred in denying appellants' motion for partial summary judgment on liability and causation.

{¶ 12} Because appellants' assignments of error are interrelated, we will address them simultaneously.

## II. Analysis

{¶ 13} In their assignments of error, appellants argue that the trial court erred in granting summary judgment in favor of appellees on their premises liability claim.

{¶ 14} A motion for summary judgment is reviewed de novo by an appellate court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under the de novo standard, we undertake our own independent examination of the record and make our own decision as to whether the moving party is entitled to summary judgment. *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980).

{¶ 15} Summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, and that is adverse to the nonmoving party. Civ.R. 56; *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 16} Premises liability is a form of negligence, which generally requires the plaintiff to demonstrate that the defendant owes a duty to him or her the breach of which proximately resulted in the plaintiff's injury. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). The duty that an owner or occupier of premises owes to one who is injured on those premises is governed by the relationship between the parties. *Light v. Ohio University*, 28 Ohio St.3d 66, 67, 502 N.E.2d 611 (1986). "That relationship will fall into one of three categories: invitee, licensee, or trespasser." *Turner v. Cathedral Ministries*, 2015-Ohio-633, 27 N.E.3d 586, ¶ 10 (6th Dist.), citing *Mostyn v. CKE Restaurants, Inc.*, 6th Dist. Williams No. WM-08-018, 2009-Ohio-2934, ¶ 13.

{¶ 17} A business invitee is a person who comes onto premises by invitation, express or implied, for purposes beneficial to the owner or occupier. *Light* at 68. "Conversely, a person who enters the premises of another by permission or acquiescence, for his own pleasure or benefit, and not by invitation, is a licensee." *Id.*

{¶ 18} In the proceedings below, the trial court did not resolve whether Patricia was a business invitee or a licensee. Rather, the trial court rendered its decision based on its analysis of the open-and-obvious doctrine. Here, the parties disagree as to whether Patricia was a business invitee or a licensee at the time of her fall. Appellants argue that Patricia was a business invitee because the union received monetary compensation from the BOE for its use of the union hall as a polling place. In response, appellees insist that the compensation paid to the union was insufficient to cover the union's costs of operation. As such, appellees contend that Patricia's use of the union's hall was not

6.

beneficial to the union and therefore Patricia was a licensee.  In light of our determination below that appellants' premises liability claims were properly dismissed under the open-and-obvious doctrine, which applies regardless of the status of the entrant, we need not resolve the issue of whether Patricia was a business invitee or a licensee.

{¶ 19} Here, the trial court found that appellees owed no duty to Patricia with respect to the entryway incline or the floor mat, because such conditions were open and obvious.  The open-and-obvious doctrine provides that owners do not owe a duty to persons entering their premises regarding dangers that are open and obvious.  *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 14, citing *Sidle* at paragraph one of the syllabus.  The rationale underlying this doctrine is "that the open and obvious nature of the hazard itself serves as a warning.  Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

{¶ 20} In their brief to this court, appellants argue that the open-and-obvious doctrine does not apply in this case because "the impermissible incline was not ramped, marked, painted, highlighted or signaled in any fashion."  Further, appellants contend that no warnings were provided as to the incline, and the design of the parking lot resulted in entrants proceeding to the entryway at an "oblique angle" without a direct line of sight to the doors.  In addition, appellants argue that the slope of the floor was not open and

7.

obvious because it was concealed by the floor mat on which Patricia tripped as she entered.

{¶ 21} In response, appellees rely upon Patricia's deposition testimony in support of their argument that appellants' premises liability claims were not sustainable because the floor mat and the slope of the floor were open and obvious. We agree.

{¶ 22} In her deposition, which was made a part of the trial record and relied upon by appellees to support their motion for summary judgment, Patricia testified that she had voted without incident at the union's hall on four separate occasions, all of which involved her entering the hall using the same doorway at which she fell in November 2015. Patricia indicated that she encountered no issues on these occasions, and acknowledged that she had not previously tripped or fallen at the entryway.

{¶ 23} Later in her deposition, Patricia was asked about what caused her to trip, to which she responded, "[w]ell, my husband opened up the door and as I was walking in on my third step in I stepped on the threshold and as I picked up my right foot something heavy was on my foot and before I knew it I put my arms out and I fell." Patricia was subsequently asked if it was the floor mat that caused her to fall. She responded in the affirmative, and went on to deny three separate times that the floor itself or the contour of the floor caused her fall. Notably, the following exchange took place thereafter:

> Q. And theoretically if you, if you were standing at the threshold or even just outside the door, had you looked there's no reason you would have been unable to see that carpet or the fact that it was curled up?

8.

A. Could you repeat it, please?

Q. Sure. If you had stopped or slowed down before you go over the threshold, had you looked down you would have been able to see the carpet and the fact that it was curled up?

A. Yes, I probably would have, yes.

{¶ 24} In an errata sheet attached to her deposition,[1] Patricia sought to clarify the foregoing testimony on the issue of what caused her to fall by indicating that "it wasn't the floor that got caught on the top of my shoe tripping me, but the mat was over an incline in the floor. If the mat wasn't over the incline or if there wasn't an incline, I don't believe my foot would have got caught under the rug and I don't believe I would have fallen."

{¶ 25} In addition to Patricia's deposition testimony, the record contains a number of other deposition transcripts, as well as pictures of the entryway that is at issue in this case. In a deposition given by another eyewitness to the fall, Loretta Deal, Deal responded in the negative when she was asked whether the slope in the floor contributed to Patricia's fall. Moreover, Gene testified in his deposition that he held the door open for Patricia as she attempted to make her way through the entryway. Thus, there is

---

[1] Appellees filed motions to strike appellants' errata sheet on the theory that it did not comply with Civ.R. 30(E). The trial court did not rule on appellees' motion. Rather, the trial court noted its consideration of the material contained in the errata in its decision on the parties' competing motions for summary judgment, but stated that the errata sheet did not alter the outcome of its analysis. Likewise, we find that the errata does not alter the outcome of this case, and we therefore need not pass upon its admissibility.

9.

nothing in the record to suggest that Patricia's view of the entryway was obstructed in any way at the time of the fall.

{¶ 26} The foregoing evidence, when taken together with the photographs of the entryway at issue here that are contained in the record, indisputably establishes the open and obvious nature of the incline in the floor, as well as the placement and condition of the floor mat. Patricia entered into the hall with nothing obstructing her view, and she acknowledges that she would have seen the allegedly hazardous entryway had she looked down. In such circumstances, we have held that no genuine issues of material fact exist that would preclude summary judgment in favor of the landowner under the open-and-obvious doctrine. *See Mostyn v. CKE Restaurants, Inc.*, 6th Dist. Williams No. WM-08-018, 2009-Ohio-2934, ¶ 21 ("Appellants, without any visual or lighting obstruction of any kind, traveled through a transparent glass entry area containing a floor mat of a color divergent from the tile beneath it. Even assuming arguendo that appellants were invitees, the record clearly demonstrates that the condition was open and obvious so as to negate any duty on the part of appellee."); *see also Armstrong, supra*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 16 ("Armstrong admitted in his deposition that when he entered the store, nothing was obstructing his view prior to his fall and that, had he been looking down, he would have seen the guardrail. Armstrong further stated that he had visited the store two or three times before his mishap. * * * [I]n viewing the photographs supplied by both parties, we find that as a matter of law, the rail in question was visible to all persons entering and exiting the store. Thus, the rail presented an

10.

open-and-obvious danger. As a result, since the hazard was open and obvious, Best Buy owed no duty to Armstrong. No genuine issue of material fact remains.").

{¶ 27} Nonetheless, appellants argue in the alternative that the open-and-obvious doctrine does not apply in this case because (1) the floor's incline did not conform to safety requirements under the building code and the Ohio Revised Code, (2) the hazardous conditions that led to Patricia's fall were caused by the active negligence of the union in placing the unsecured floor mat over the inclined portion of the floor, and (3) there are attendant circumstances that diverted Patricia's attention away from the hazardous floor mat and sloped floor. We will address these arguments in turn.

### A. Negligence Per Se

{¶ 28} "While the open-and-obvious doctrine excuses a breach of a defendant's duty of care, it does not override statutory duties." *Asher v. Glenway Real Estate, LLC*, 2019-Ohio-4851, --- N.E.3d ----, ¶ 25 (1st Dist.), citing *Lattimore v. K & A Mkt., Inc.*, 1st Dist. Hamilton No. C-150753, 2016-Ohio-5295, ¶ 9. In *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, the Supreme Court of Ohio stated the open-and-obvious doctrine does not shield a defendant from liability where the plaintiff has proven negligence per se based upon the violation of a statute. *Id.* at ¶ 15, citing *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 25, and *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 567-568, 697 N.E.2d 198 (1998).

{¶ 29} "The concept of negligence per se allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the

11.

defendant committed or omitted a specific act prohibited or required by statute; no other facts are relevant." *Id.*, citing *Chambers* at 565-566. For a violation of a statute to constitute negligence per se, the statute must "set forth a positive and definite standard of care." *Mann v. Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 2014-Ohio-455, 5 N.E.3d 594, ¶ 29. Where a statute only sets forth a "general, abstract description of a duty," a violation of that statute constitutes evidence of negligence, but does not rise to the level of negligence per se. *Id.* Moreover, "[t]he violation of an administrative rule does not constitute negligence per se." *Chambers* at the syllabus.

{¶ 30} In support of their contention that the sloped floor constituted negligence per se for which appellees should be held liable, appellants refer to R.C. 3501.29(B)(1)(a) and (c), the Voting Accessibility for the Elderly and Handicapped Act, 52 U.S.C. 20102 and 20107, the Americans with Disabilities Act ("ADA"), the Ohio Basic Building Code, and regulations involving polling places promulgated by the Ohio Secretary of State.

{¶ 31} R.C. 3501.29(B)(1) provides, in relevant part:

(B)(1) Except as otherwise provided in this section, the board shall ensure all of the following:

(a) That polling places are free of barriers that would impede ingress and egress of handicapped persons;

* * *

12.

(c) That the entrances of polling places are level or are provided with a nonskid ramp that meets the requirements of the "Americans with Disabilities Act of 1990," 104 Stat. 327, 42 U.S.C. 12101.

{¶ 32} It is clear from a review of this statute that it is directed at ensuring polling place access for persons who are handicapped. "It is well-settled law in Ohio that for a violation of a statute to constitute negligence per se, the injured person must be a part of the class the statute was designed to protect." *Community Ins. Co. v. Hambden Twp.*, 11th Dist. Lake No. 97-G-2092, 1998 WL 682385, *6 (Sept. 30, 1998), citing *Marsh v. Koons*, 78 Ohio St. 68, 84 N.E. 599 (1908), paragraph one of the syllabus; *see also Lajoie v. Maumee River Yacht Club*, 6th Dist. Lucas No. L-89-014, 1990 WL 7976, *2 (Feb. 2, 1990). There is no evidence in the record to demonstrate that Patricia was handicapped at the time of her fall. Therefore, appellants are not entitled to rely upon the alleged violation of R.C. 3501.29(B)(1) to establish negligence per se in this case.

{¶ 33} Under 52 U.S.C. 20102, polling places are required to be "accessible to handicapped and elderly voters." An "elderly" person is defined as one who is 65 years of age or older,[2] and "accessible" means "accessible to handicapped and elderly individuals for the purpose of voting or registration, as determined under guidelines established by the chief election officer of the State involved." 52 U.S.C. 20107. This

---

[2] Patricia was 73 years old at the time of her fall.

13.

abstract, general accessibility requirement does not constitute a legislative enactment the violation of which constitutes negligence per se. *Mann* at ¶ 29.

{¶ 34} Additionally, we have held that a "violation of the ADA is not negligence per se because it requires a determination of whether certain acts are reasonable under the specific circumstances of each case. Likewise, violations of the ADA guidelines, as incorporated by the [Ohio Administrative Code] and [Ohio Basic Building Code], are not evidence of negligence per se since they are administrative rules." (Citations omitted.) *Klostermeier v. In & Out Mart*, 6th Dist. Lucas No. L-00-1204, 2001 WL 305827, *3 (Mar. 30, 2001). By extension, the alleged violations of regulations promulgated by the Ohio Secretary of State do not constitute negligence per se, as such regulations are merely administrative rules, not legislative enactments. In short, appellants have failed to demonstrate that appellees have violated a legislative enactment that would give rise to negligence per se and exclude the application of the open-and-obvious doctrine.

### B. Active Negligence

{¶ 35} Next, appellants contend that the hazardous conditions that led to Patricia's fall were caused by the union's active negligence, namely the placement of the unsecured floor mat over the inclined portion of the floor. Notably, appellants failed to introduce evidence to affirmatively demonstrate that the floor mat was actually placed over the incline. Indeed, the photographs of the floor mat, taken after the fall, depict the mat resting on the flat surface of the floor and away from the incline, and the witnesses of the fall, including Patricia, could not state with certainty that the floor mat was over the

14.

inclined portion of the floor prior to the fall. Moreover, the placement of the mat occurred long before Patricia entered onto the premises, and therefore does not constitute "active negligence." *Dunn v. Heineman's Winery*, 6th Dist. Ottawa No. OT-14-044, 2015-Ohio-4054, ¶ 12 (finding that the defendant's placement of plywood boards did not constitute active negligence, because it occurred before the plaintiff arrived at the defendant's winery and had therefore become a static condition through the lapse of time). Thus, the "active negligence" exception to the open-and-obvious doctrine does not apply.

### C. Attendant Circumstances

{¶ 36} Finally, appellants contend that the open-and-obvious doctrine does not apply here because there were attendant circumstances that diverted Patricia's attention away from the hazardous floor mat and sloped floor.

{¶ 37} An "attendant circumstance" has been described as "a factor that contributes to the fall and is beyond the injured person's control. The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event." *Jackson v. Pike Cty. Bd. of Commrs.*, 4th Dist. Pike No. 0CA805, 2010-Ohio-4875, ¶ 21. Ordinarily, "the attendant circumstance must be 'an unusual circumstance of the property owner's making.'" *Haller v. Meijer, Inc.*, 10th Dist. Franklin No. 11AP-290, 2012-Ohio-670, ¶ 10, quoting *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 17; *see*

15.

*also Lang,* 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, at ¶ 27 ("none of the facts appellant raises as 'attendant circumstances' are conditions within the landowner's control. For example, the fact that her husband was tired and required an oxygen tank were not within the landowner's control.").

{¶ 38} In their brief, appellants specify the attendant circumstances faced by Patricia as "her desire to vote, the presence of her husband, her movement through the exterior public entrance doors of the Union Hall, and her intended progress towards the voting machines within the facility." These are not attendant circumstances that eliminate the application of the open-and-obvious doctrine. None of these factors were in any way unusual, nor were they circumstances that were within appellees' control.

{¶ 39} In light of the foregoing, we conclude that the hazardous conditions alleged by appellants (the floor mat and the incline of the floor) were open and obvious to Patricia at the time of her fall. Because no exceptions to the open-and-obvious doctrine apply in this case, summary judgment in appellees' favor was appropriate. Accordingly, we find appellants' assignments of error not well-taken.

### III.  Conclusion

{¶ 40} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.