[Cite as *Lepkowski v. Wild Wings Camp & Boat-O-Minimum Water Slip Condominium Owners' Assn.*, 2024-Ohio-5625.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

| | |
|---|---|
| Frank Lepkowski, Jr. | Court of Appeals No. OT-24-002 |
| Appellant | Trial Court No. 20220CVH0050 |
| v. | |
| Wild Wings Camp and Boat-O-Minimum Water Slip Condominium Owners' Association, et al. | **DECISION AND JUDGMENT** |
| | Decided: November 27, 2024 |
| Appellees | |

* * * * *

Michael J. Zychowicz, for appellant.

Brian T. Winchester and Taylor K. Dennon,
for appellee, Wild Wings, Inc.

Robert J. Bahret and Stephen F. House,
for appellee, DLF Enterprises, LLC.

* * * * *

**SULEK, J.**

{¶ 1} Appellant, Frank Lepkowski, Jr., appeals the Ottawa County Court of Common Pleas' December 19, 2023 and January 4, 2024 judgments granting summary judgment to appellees, DLF Enterprises, LLC and Wild Wings, Inc., on his premises

liability claim. Because Lepkowski failed to set forth a triable issue of fact, the trial court's judgments are affirmed.

## I. Facts and Procedural History

{¶ 2} In August 2019, Lepkowski docked his boat at Wild Wings Marina in Oak Harbor, Ohio, after renting dock space. In 2020, he decided to dock his boat at a different location in the marina and rented a dock from an individual whose ownership interest in Wild Wings Camp and Boat-O-Minium Water Slip Condominiums included a dock space in Wild Wings Marina. Wild Wings leased the marina's boat launch ramps to DLF. DLF, in turn, was responsible for the maintenance and repair of the ramps and collected a fee for their use.

{¶ 3} The boat launch area has two ramps, the north and the south ramp. Each ramp consists of five floating-dock sections, made mostly of wood with metal couplings and flotation tubes underneath. The ramps are designed to rise and fall with the water level. On each ramp, the first float is attached directly to the second float and the second and third floats are directly attached. The third and fourth floats are attached by a center piling with metal rings that fit over the piling; the piling's location results in a six-to-eight-inch gap between the floats. Finally, the fourth and fifth floats are attached by pilings located at the periphery. A set of steel piles or poles in the waterway separates the two ramps.

{¶ 4} During the 2019 and 2020 boating seasons, Lepkowski used the ramps a total of four times. When Lepkowski launched his boat in April 2020, he believed that he

2.

used the right, or north, boat ramp. He stated that he had not previously observed the gap between floats three and four. Lepkowski acknowledged that the north and south ramps were identical.

{¶ 5} On June 13, 2020, Lepkowski and his son, Frank, Jr., took the boat out of the water for several hours to install various electronic upgrades. Lepkowski could not recall which ramp they used to retrieve the boat. While re-launching the boat on the north ramp later that day, Lepkowski had two lines attached to the boat and walked it along the ramp while his son operated the winch at the front of the boat, easing it into the water. Lepkowski stated that there was a strong wind and he maintained a close, controlled grip on the lines while stepping sideways to prevent the boat from drifting into the pilings in the waterway. As he walked along the boat, he stepped into the gap between the third and fourth floating dock sections, cutting his leg on exposed metal. Lepkowski agreed that had he been looking down and to the right he "would probably see the gap," and he acknowledged the gap's visibility in various exhibit photographs.

{¶ 6} During the 2020 boating season, Lepkowski did not pay a fee to DLF to launch his boat. He believed that the dock space rental covered the launch fees. Lepkowski acknowledged that "transient" boaters were required to pay a launch fee and that there was a drop box for payment at the nearby gas station.

{¶ 7} Lepkowski's son, Frank Jr., assisted with launching and removing his father's boat at the Wild Wings Marina in 2019 and 2020. Frank Jr. did not observe the gap between the third and fourth floating dock sections prior to the accident.

3.

{¶ 8} On March 10, 2022, Lepkowski commenced this action alleging that DLF and Wild Wings[1] were negligent by failing to keep the premises reasonably safe for business invitees, failing to "prevent, remove, or warn against hazards" the on the property, and failing to warn Lepkowski of a "latent hidden danger." Lepkowski claimed long-term physical impairment and pain and suffering due to DLF and Wild Wings' breach of duty.

{¶ 9} DLF and Wild Wings each filed motions for summary judgment, claiming they had no legal duty to protect or warn Lepkowski of an open and obvious hazard, that there were no attendant circumstances negating the open and obvious status, and that they were entitled to immunity based on Lepkowski's recreational user status. Both motions relied on Lepkowski's deposition testimony.

{¶ 10} Lepkowski opposed the motions asserting that issues of fact remained whether the gap was open and obvious. He contested the recreational user arguments by stating that the launch ramps were not open to the public. He also attached and relied upon the marine expert affidavit of Arthur Faherty, who opined that a reasonable person tending boat lines would not observe the gap between the docks. Faherty concluded that the gap caused by the piling between the third and fourth floating docks failed to comply with floating equipment planking and spacing standards.

---

[1]Defendant Wild Wings Camp and Boat-O-Minium Water Slip Condominium Owners' Association was voluntarily dismissed from the action on June 27, 2023.

**{¶ 11}** The trial court granted the motions for summary judgment finding "if the court determined that Lepkowski was a recreational user of the ramp, [DLF and Wild Wings] would be immune from liability; however, even if the court determined that Lepkowski was a business invitee, the gap between the docks was open and obvious and there were no attendant circumstances present which would present an exception to the open and obvious doctrine." This appeal followed.

## II. Assignments of Error

**{¶ 12}** Lepkowski presents three assignments of error:

> 1. The trial court erred when it concluded on the summary judgment record that the hazardous gap between two floating dock sections that Appellant inadvertently stepped into was "open and obvious" as a matter of law, and that Appellees therefore owed Appellant no duty.

> 2. The trial court erred when it concluded on the summary judgment record that the "attendant circumstances" exception to the "open and obvious" doctrine was inapt in this case as a matter of law.

> 3. The trial court erred to the extent it concluded on the summary judgment record that Appellant was a "recreational user" of Appellees' boat ramp and floating dock as a matter of law, and that Appellees therefore were immune from liability for Appellant's injuries.

## III. Analysis

### A. Summary Judgment Standard

**{¶ 13}** An appellate court reviews the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Bliss v. Johns Manville*, 2022-Ohio-4366, ¶ 12. Under Civ.R. 56(C), a trial court shall grant summary judgment only where (1) no genuine issue of material fact remains to be litigated, (2) the moving

5.

party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.

{¶ 14} "A party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact." *King v. Buildtech Ltd. Constr. Dev.*, 2023-Ohio-1092, ¶ 23 (6th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, (1988), syllabus. "When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact." *Id.*, citing Civ.R. 56 (E) and *Riley v. Montgomery*, 11 Ohio St.3d 75, 79 (1984). "A 'material' fact is one that would affect the outcome of the suit under the applicable and substantive law." *Id.*, citing *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304 (6th Dist. 1999). (Additional citations omitted.)

### B. The gap between the dock sections was open and obvious.

{¶ 15} In a negligence action, a plaintiff must establish the existence of a duty, a breach of that duty, and damages proximately resulting from the breach of the duty. *Caruso v. Erie Shoreline Properties*, *LLC*, 2018-Ohio-1659, ¶ 7 (6th Dist.), citing *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). Premises liability is a form of negligence where the "duty that an owner or occupier of premises owes to one who is

6.

injured on those premises is governed by the relationship between the parties." *Gilliam v. Rucki*, 2023-Ohio-1413, ¶ 10 (6th Dist.), citing *Light v. Ohio University*, 28 Ohio St.3d 66, 67 (1986). The relationship falls into the categories of invitee, licensee, or trespasser. *Id.*, quoting *Turner v. Cathedral Ministries*, 2015-Ohio-633, ¶ 10 (6th Dist.). An invitee is a person rightfully on the premises for a purpose beneficial to the owner. *Hammer v. McKinnis*, 2004-Ohio-7158, ¶ 7 (6th Dist.). A licensee is permitted on the premises for his own pleasure or benefit. *Id.* Finally, a trespasser enters a property for his own benefit or pleasure and without express of implied permission. *Id.*

{¶ 16} A premises owner's duty to an invitee is to use "'ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers.'" *Hill v. At Home Stores, LLC*, 2023-Ohio-2798, ¶ 32 (6th Dist.), quoting *Clark v. BP Oil*, 2005-Ohio-1383, ¶ 10 (6th Dist.). Conversely, a premises owner or occupier has no duty to warn an invitee of dangers or defects that are open and obvious because the open and obvious nature "serves as a warning to the invitee and absolves the landowner/occupier of any duty to protect the plaintiff." *Rice v. Kroger*, 2020-Ohio-2654, ¶ 7 (6th Dist.), citing *Lang v. Holly Hill Motel, Inc.*, 2009-Ohio-2496, ¶ 11. A danger is considered open and obvious "'when it is in plain view and readily discoverable upon ordinary inspection.'" *Id.*, quoting *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.*, 2009-Ohio-6677, ¶ 68 (6th Dist.); *Gilliam* at ¶ 20.

> "The question of whether a particular danger is open and obvious is answered objectively, without regard to the injured plaintiff. Accordingly, the open-and-obvious test 'properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in

7.

encountering it.'" *Hissong v. Miller*, 186 Ohio App.3d 345, 2010–Ohio–961, 927 N.E.2d 1161, ¶ 8, quoting *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 13.

*Caruso* at ¶ 10. "While an invitee is expected to be aware of their surroundings and look down to avoid a danger . . . the open and obvious standard is not so strict as to require a person to constantly be looking downward for dangers under all circumstances." (Citations omitted.) *Rice* at ¶ 7 (6th Dist.).

{¶ 17} Lepkowski claims that he was an invitee and that issues of fact precluded the trial court's finding that the gap was open and obvious.[2] He asserts that neither he nor his son observed the gap prior to his fall, that the floating docks appear contiguous upon approach, that other marinas cover gaps between dock sections with a flap or bridge material, that he had not previously navigated the gap, and that he was reasonably attending to his boat during its launch.

{¶ 18} Conversely, Wild Wings and DLF assert that Lepkowski and his son's subjective belief is not determinative as it is an objective standard that is used in determining whether a hazard is open and obvious, that the argument that the gap is not noticeable from a distance does not negate the fact that it was observable when Lepkowski had the ability to avoid it, and that Lepkowski and his son testified that they had been on the docks, including the north dock, a number of times prior to the accident.

---

[2]Though the parties dispute whether Lepkowski was an invitee or trespasser, our analysis, assumes the more stringent, invitee standard applies.

{¶ 19} Lepkowski relies on *Rice v. Kroger*, *supra*, *Ellington v. JCTH Holdings*, 2015-Ohio-840 (7th Dist.), and *Jacobsen v. Coon Restoration & Sealants, Inc.*, 2011-Ohio-3563 (5th Dist.) in support of his argument that the open and obvious doctrine did not require him to be constantly look down under all circumstances.

{¶ 20} In *Rice*, a store patron, distracted by reading a sales flyer she received upon entering the store, tripped and fell over an empty pallet in the produce department. This court found an issue of fact regarding whether the location the empty pallet caused it to be hidden from view until the store patron was nearly upon it and whether it would be readily apparent to a reasonable patron. *Id.* at ¶ 15.

{¶ 21} In *Ellington*, 2015-Ohio-840 (7th Dist.), the appellate court concluded that issues of fact remained as to whether a hole in a parking lot was open and obvious. The court noted that the trial court found that the hole was subjectively open and obvious to the plaintiff but failed to determine whether the hole was objectively open and obvious. *Id.* at ¶ 24. Additionally, the parties provided no clear representation of the size of the hole. *Id.* at ¶ 26. The court further noted that the lack of evidence as to how long the hole had been in the parking lot and whether the plaintiff had previously traversed that area of the lot. *Id.* at ¶ 28.

{¶ 22} And in *Jacobsen v. Coon Restoration & Sealants, Inc.*, 2011-Ohio-3563 (5th Dist.), the court of appeals determined there was a genuine issue of fact regarding whether a metal stump in a parking lot was open and obvious and whether the attendant

9.

circumstance—a patron carrying a pizza box blocking the view of her feet— would have expected and discovered the danger." *Id.* at ¶ 23, 26.

{¶ 23} On review, the facts at issue are distinguishable. Unlike *Rice*, there is no evidence that the gap was obscured. Unlike *Ellington*, the parties provided ample evidence, including numerous photographs, regarding the gap's attributes. In addition, Lepkowski admitted to previously traversing the north and south docks, which he stated were identical. Finally, as discussed below, *Jacobsen's* conclusion that a patron's act of carrying a pizza box is an attendant circumstances conflicts with the common definition of attendant circumstance. *See Jacobsen* at ¶ 32 (Wise, J., dissenting) (stating that attendant circumstances "do not include the individual's activity at the moment of the fall, unless the individuals' attention was diverted by an unusual circumstance of the property owner's making.").

{¶ 24} The facts in this case are more analogous to those in *Caruso*, 2018-Ohio-1659 (6th Dist.), where the plaintiff was injured after falling over a railroad tie while playing miniature golf. The trial court granted summary judgment, finding that the tie was open and obvious. Affirming the judgment, this court stated:

> "What is material to the open-and-obvious test is whether the danger is observable, which means it 'is discoverable or discernible by one who is acting with ordinary care under the circumstances.'" (Citations omitted). *Hissong* [*v. Miller*, 2010-Ohio-961] at ¶ 11. "[T]he question is answered, and the open-and-obvious nature of the danger is established, if the plaintiff admits that if she had looked down she would have seen the danger." *Id.* at ¶ 12.

10.

*Id.* at ¶ 11. This court then found that appellant's admission that had she looked she would have seen the tie, that a reasonable person using ordinary care would have discovered the tie, and that she had previously played the course and safely navigated any obstacles supported the conclusion that the tie was open and obvious. *Id.* at ¶ 12-13; *see also Isbell v. Dollar Gen.*, 2019-Ohio-1560, ¶ 11-12 (6th Dist.) (A reasonable person would have seen the spilled container of sour cream.).

{¶ 25} Here, Lepkowski gave the following testimony regarding the observability of the gap:

> Q: If you were looking down and to your right before you stepped to your right, do you know whether or not you would have been able to see this opening?
> MR ZYCHOWICZ: Objection calls for speculation.
> A: I can speculate that if I was looking down and to my right, I would probably see that gap.
> Q: On the four occasions prior to this incident when you were on one or the other ramps, did you have to step over that opening?
> A: I'm sure I did, but I don't remember it.
> Q: If you had stepped over the opening, would you have seen it?
> A: I don't remember.
> Q: Do you believe it's a visible condition?
> A: This picture right there, it's visible. When you're doing a job where there's multiple things that are at hand, that's the last thing from your mind, is this a safe ramping dock.
> Q: You had no prior issues with either dock before June 13, 2020 in the afternoon, correct?
> A: Right, maybe it was just luck that I didn't.

{¶ 26} As in *Caruso*, Lepkowski had been on the dock multiple times prior to the accident and admitted that had he been looking he would have seen the gap. The photographs clearly depict the gap between the third and fourth floating docks and the center piling which extends several feet above the dock. Lepkowski's expert admits this

11.

"significant change" in the configuration of the floating docks.  Accordingly, the gap was an open and obvious condition of the dock relieving DLF and Wild Wings of any duty to warn its invitees.  Lepkowski's first assignment of error is not well-taken.

### C. The attendant circumstances exception does not apply.

{¶ 27} Lepkowski's second assignment of error alternatively contends that the application of the attendant circumstance exception creates an issue of fact because windy conditions diverted his focus and he feared that his boat would drift into the center of the waterway and hit the concrete pilings.

{¶ 28} An attendant circumstance may create an issue of fact as to whether a danger is open and obvious.  *Herbst v. Kroger Co.*, 2009-Ohio-2767, ¶ 9 (6th Dist.)  An attendant circumstances is generally defined as "'a factor that contributes to the fall and is beyond the injured person's control.  The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event.'"  *Lowe v. Loc. Union No. 14 U.A.W.*, 2020-Ohio-703, ¶ 37 (6th Dist.), quoting *Jackson v. Pike Cty. Bd. of Commrs.*, 2010-Ohio-4875, ¶ 21 (4th Dist.).  "'[A]n attendant circumstance must be "so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise."'"  (Citations omitted.)  *Coldren v. Northview Shopping Plaza, LLC*, 2023-Ohio-1703, ¶ 30 (3d Dist.).  "Ordinarily, 'the attendant circumstance must be "an unusual circumstance of the property owner's making."'"  *Lowe* at ¶ 37, quoting

12.

*Hallar v. Meijer, Inc.*, 2012-Ohio-670, ¶ 10 (10th Dist.), quoting *McConnell v. Margello*, 2007-Ohio-4860, ¶ 17 (10th Dist.); *see also Stinson v. Kirk*, 2007-Ohio-3465, ¶ 25 (6th Dist.); *Hammond v. Lutz*, 2022-Ohio-3542, ¶ 13 (1st. Dist.); *Lang*, 2007-Ohio-3898, at ¶ 27 (4th Dist.).

{¶ 29} Lepkowski contends that the wind diverted his attention. Wind is not a circumstance of a property owner's making. *See Meyer v. Dayton*, 2016-Ohio-8080, ¶ 20 (2d Dist.) (The weather when the appellant parked versus when she returned was not an attendant circumstances.) Lepkowski, however, also admitted that prior to the accident he had his boat "under control" as he walked down the dock and he was "looking down at [his] feet to make sure [he] was not going to step off the edge of the dock." His care to watch his step belies his argument that the windy conditions completely undermined his ability to observe the gap. Because Lepkowski failed to establish a genuine issue of material fact regarding the existence of an attendant circumstance, his second assignment of error is not well-taken.

## D. Recreational User Status

{¶ 30} Lepkowski's third assignment of error asserts error in the trial court's finding that Lepkowski's status as "recreational user" of the boat ramp. Because we have already determined that the court had a sufficient basis to grant summary judgment due to the open and obvious nature of the gap, we decline to address the issue. *See* App.R. 12(A)(1)(c). Lepkowksi's third assignment of error is moot.

13.

## IV. Conclusion

**{¶ 31}** Based on the foregoing, Lepkowski failed to establish a genuine issue of material facts supporting his premises liability claim. The judgments of the Ottawa County Court of Common Pleas are affirmed. Lepkowski is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                       _____

                                               JUDGE

Gene A. Zmuda, J.

                                                 _____

Charles E. Sulek, P.J.                      JUDGE
CONCUR.

                                                 _____

                                                 JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.