[Cite as *Varwig v. JA Doyle, L.L.C.*, 2023-Ohio-210.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

David and Mary Varwig                                    Court of Appeals No.  L-22-1035

      Appellants                                     Trial Court No.  CI0202002533

v.

JA Doyle LLC, et al.                                     **DECISION AND JUDGMENT**

      Appellees                                      Decided:  January 25, 2023

* * * * *

Timothy J. Walerius and Stephen D. Hartman, for appellants.

Mark W. Sandretto and Charles E. Hatch, for appellees.

* * * * *

**DUHART, J.**

{¶ 1} Appellants, David Varwig and Mary Varwig, appeal from a judgment entered by the Lucas County Court of Common Pleas, granting summary judgment in favor of appellees, JA Doyle, LLC, JA Doyle Corporation, and Josh Doyle, individually. For the reasons that follow, we affirm the judgment of the trial court.

**Statement of the Case**

{¶ 2} On July 13, 2020, appellants commenced the instant action against appellees, asserting claims for failure to build in a workmanlike manner, negligent design, and negligent supervision. [1]

{¶ 3} On October 8, 2020, appellees filed their answer, generally denying the allegations, and asserted a third-party complaint against Ken Kreig d/b/a K&L Flooring. Throughout 2021, the parties engaged in substantial written and deposition discovery. On December 14, 2021, appellees filed a motion for summary judgment seeking dismissal of all of appellants' claims with prejudice.

{¶ 4} On February 24, 2022, the trial court entered its opinion and judgment entry granting appellees' motion for summary judgment and dismissing appellants' complaint. Appellants timely filed an appeal.

**Statement of Facts**

{¶ 5} This case arises out of a residential construction dispute between a builder and a subsequent vendee, with the subject of the dispute involving tile flooring and underlying structural framing. On March 30, 2016, appellee JA Doyle Corporation ("JADC") contracted with non-parties Benjamin and Christina Orona ("the Oronas") to design and construct a ranch style residence located at 8726 Navonna Circle, in Waterville, Ohio ("the residence").

---

[1] Appellants' complaint also stated claims against "Homes by Josh Doyle" and Homes by Josh Doyle, LLC, however they are not parties to the instant appeal.

2.

**{¶ 6}** The Oronas specified that the residence be designed with (1) wood flooring finishes in the great room, dining room, and den; and (2) an unfinished basement. JADC designed the residence to meet the Oronas' specifications. JADC submitted its plans for the residence to the Lucas County Building Regulations Department, which approved the plans and issued a building permit for the residence on May 27, 2016. JADC did not revise the plans after the building permit was issued. The residence's structural framing was completed and approved by the Lucas County Building Regulations Department on September 14, 2016.

**{¶ 7}** Although the Oronas originally specified that the residence would have wood flooring, after the residence was framed, they opted to install tile flooring. The Oronas selected the tile and directed third-party defendant K&L Flooring to supply and install it. The installation was completed in October of 2016.

**{¶ 8}** In the summer of 2018, appellants engaged a local realtor to assist them in their search for a home in the Toledo area. During their search, they learned that the Oronas' property was among those available for purchase. After looking at multiple properties, appellants decided to make an offer to buy the residence. Prior to making their offer to purchase, appellants walked through the residence with their realtor representatives. Appellants testified that during their walkthrough, nothing impeded their ability to see and inspect the condition of the tile floor or the structural framing and floor joists in the basement that supported the main floor. In fact, appellant Mary Varwig noted that one of the things that she "always look[s]" for is the type of floor joists that are

3.

used in construction; she specifically noted that the floor joists in the residence were made of wood, rather than composite materials, as had been the case in another residence that had been owned by appellants.

{¶ 9} After their purchase offer was accepted, appellants hired SeaGate Inspections, LLC ("SeaGate") to inspect the residence. SeaGate conducted its inspection on July 10, 2018. Like appellants, the SeaGate inspector had full access to the residence, including the tile floor and the structural framing in the basement. The inspector disclosed no concerns with the condition of the tile floor or the structural framing in the basement, or with the design in general.

{¶ 10} Appellants took title to the residence in the summer of 2018. Intending to finish the basement, appellants sought, and received, from appellees a set of plans for the residence. Appellants allege that in the fall of 2019 they noticed that the grout in the tile floor was cracked and chipped in some locations, and that certain of the tiles were loose or lacking in adhesive. Despite noticing these claimed deficiencies, appellants proceeded to spend nearly $60,000 to finish the basement by adding an office, a bedroom, flooring, extensive drywall, drop ceilings, a fireplace, and a bathroom. The contractor whom appellants retained to remodel their basement -- Benjamin Gittus, himself a licensed home inspector -- testified that prior to commencing the project, the condition and construction of the joists, the laminated veneer lumber beams, the subfloor, and the materials used in the construction of the basement and floor were all readily open to inspection, measurement, and evaluation.

4.

{¶ 11} On July 13, 2020, after the basement project was finished, appellants filed their complaint against appellees. Appellants contend that the tile loosening was caused by the designed size and/or excessive deflection in the floor joists.[2]

### Assignments of Error

{¶ 12} Appellants asserts the following assignments of error on appeal:

I. The court erred in the interpretation of when the statute of limitations accrued which is found in the Opinion and Judgment Entry at p. 5.

II. The court erred in the interpretation and application of caveat emptor at p. 4.

### Analysis

{¶ 13} The granting of summary judgment is governed by Civ.R. 56(C), which provides in relevant part:

Summary judgment shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, written admission, affidavits,

transcripts of evidence, and written stipulations of fact, if any, timely filed

in the action, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law.

{¶ 14} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the

---

[2] The term "deflection," as used in this case means the flexing or sagging in a joist under load.

trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264. The moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.* at 292, 293. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. *Id.* at 293. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 15} A court of appeals reviews a motion for summary judgment de novo. *Lowe v. Local Union No. 14 U.A.W.,* 6th Dist. Lucas No. L-19-1042, 2020-Ohio-703, ¶ 14. Under the de novo standard, the appeals court undertakes its own independent examination of the record and makes its own decision as to whether the moving party is entitled to summary judgment.

{¶ 16} Appellants argue in their first assignment of error that the trial court erred in determining when the statute of limitations began to run with respect to each of their claims.

{¶ 17} We look first to appellants' claim for breach of the duty to build in a workmanlike manner. Ohio law is clear that "'[a]n action for the failure of a builder to perform in a workmanlike manner is a tort sounding in negligence and is governed by the

6.

four-year statute of limitations found in R.C. 2305.09.'" *Aluminum Line Products Co. v. Brad Smith Roofing Co., Inc.*, 109 Ohio App.3d 246, 254, 671 N.E.2d 1343 (8th Dist.1996). In such cases, unless damage is immediate, the cause of action does not accrue until actual injury or damage ensues. *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 433 N.E.2d 147, paragraph two of the syllabus. This rule is not a discovery rule, involving a discovery of injury, but rather deals with a delayed occurrence of damages. *See Aluminum Line* at 255.

{¶ 18} In the instant case, where appellants allege that the tile flooring experienced damage in the fall of 2019, less than a year before they filed suit, their cause of action for negligent construction was, in fact, timely filed. Thus, appellants' first assignment of error is found well-taken with respect to their claim for negligent construction. But because the trial court also ruled upon the merits of this claim, our analysis of this cause of action is not yet concluded.

{¶ 19} Appellants indicate in their second assignment of error that the trial court incorrectly applied the doctrine of caveat emptor in dismissing their claim for breach of duty to build in a workmanlike manner. Review of the trial court's opinion and judgment entry clearly reveals that the trial court did not apply the doctrine of caveat emptor, but instead applied the test set forth in *Mitchem* and *Jones*. Because the trial court did not actually apply the doctrine of caveat emptor, appellant's second assignment of error would properly be dismissed on this basis alone. In the interest of fairness, however, we will review the merits of appellants' claim for negligent construction and, in so doing, we

7.

will consider the specific arguments that appellants set forth in support of their second assignment of error.

{¶ 20} In the instant case, appellants' assertion of a breach of duty to build in a workmanlike manner expressly rests upon allegations that the size of the floor joists and the lack of bridging on the floor joists were defective conditions of the property. Specifically, appellants allege in their complaint:

6. In 2019 Plaintiffs started to have the porcelain plank ceramic tile break loose from the subfloor. * * *

* * *

9. Plaintiffs hired a structural engineer to inspect the house and determine what may be causing the porcelain plank ceramic tile to break loose from the subfloor.

10. The engineer found that the floor joists had too much deflection and that the floor moved up and down enough to affect the porcelain plank tile.

11. Upon information and belief the floor joists did not have bridging which decreases deflection.

12. Upon information and belief the floor joists are undersized for the amount of weight they are carrying.

{¶ 21} The seminal case setting forth a builder's duty to construct a residence in a workmanlike manner is *Mitchem v. Johnson*, 7 Ohio St.2d 66, 218 N.E.2d 594 (1966), which provides:

8.

A duty is imposed by law upon a builder-vendor of a real-property structure to construct the same in a workmanlike manner and to employ such care and skill in the choice of materials and work as will be commensurate with the gravity of the risk involved in protecting the structure against faults and hazards, including those inherent in its site. If the violation of that duty proximately causes a defect hidden from revelation by an inspection reasonably available to the vendee, the vendor is answerable to the vendee for the resulting damages.

{¶ 22} The Supreme Court of Ohio reiterated *Mitchem*'s articulation of the foregoing test in *Jones v. Centex Homes*, 132 Ohio St.3d 1, 2012-Ohio-1001, 967 N.E.2d 1199, ¶ 6. Builders are not insurers of the structures they build. *Mitchem* at 69. Thus, while all builders must adhere to the duty to build in a workmanlike manner, the builder is not liable to a subsequent vendee unless the vendee demonstrates that the defect at issue was hidden from an inspection reasonably available to the buyer. *See, e.g., Wildenthaler v. Mauk*, 8th Dist. Cuyahoga No. 61127, 1991 WL 144404, *3 (1991) (affirming summary judgment where vendee failed to demonstrate that the alleged defect was hidden from inspection).

{¶ 23} Here, appellants do not dispute that they and their inspector had unfettered ability to inspect the condition and construction of the joists at the time they purchased the residence. Nor do appellants dispute that they could plainly observe the absence of the bracing. The contractor whom appellants retained to finish their basement testified

9.

that the condition and construction of the joists, the laminated veneer lumber beams, the subfloor, and the materials used were all readily open to inspection prior to commencing the finished project. Thus, there is no evidence of the existence of a defect hidden from revelation by an inspection reasonably available to appellants.

{¶ 24} Appellants assert that because they did not observe loose tile until after they purchased the residence, no defect existed to be observed at the time of purchase. This assertion is inconsistent with appellant's pleadings and with the claims actually alleged. In their complaint, appellants expressly allege that the defect is in the size of the joists and in the absence of bracing in the joists. Loosening of the tile was merely a claimed subsequent manifestation of -- or "resulting damages" from -- the defect that appellants necessarily argued was present at the time they purchased the residence. There is no dispute that the joists, their construction, the absence of bridging, and the fact that the joists underlaid a tile floor were all open and readily observable, and, in fact, were observed by appellants, by their inspector, and by their contractor.

{¶ 25} In addition, appellants argue -- again in the previously rejected context of a caveat emptor analysis -- that, under the circumstances of this case, a jury should decide whether it was reasonable for appellants to conduct an inspection of the joists. As indicated by *Mitchem*, its progeny, and the trial court's opinion, the question is not, as appellant's claim, whether it was reasonable for appellants to conduct a structural inspection prior to purchasing the residence. Nor did the trial court make any finding in that respect. Rather, *Mitchem* and *Jones* impose liability on a builder for failure to build

in a workmanlike manner when the defect would remain hidden from the buyer even after an inspection *reasonably available* to the buyer. Thus, the questions are (1) whether there existed some potential inspection that would have revealed the size of the joists, their construction, and the absence of bracing; and (2) whether such an inspection was reasonably available to appellants. In this case, the answer to both questions is decidedly yes. The purported defects of which appellants complain were plainly open to be seen; no inspection at all was necessary to reveal these conditions, even if appellants did not appreciate their significance. Moreover, appellants admitted that they obtained a structural inspection that purported to reveal the issues after they purchased the residence, thereby demonstrating that such an inspection was, in actual fact, reasonably available to them. In any event, appellants failed to provide any evidence competent under Civ.R. 56(C) that the structural inspection that they obtained after purchasing the home was not reasonably available to them prior to the sale.

{¶ 26} Because there is no evidence of the existence of a defect hidden from revelation by an inspection reasonably available to appellants, appellants are precluded from recovering against appellees in this case for breach of duty to build in a workmanlike manner. The trial court did not err in granting summary judgment with respect to appellants' claim for breach of duty to build in a workmanlike manner. Accordingly, appellant's second assignment of error is found not well-taken.

{¶ 27} Next, we consider whether the trial court erred in determining when the statute of limitations began to run with respect to appellants claims for negligent design

11.

and negligent supervision.  Appellants allege in their complaint that the cracked grout and loose tiles stem from alleged negligence in the design of the residence, stating:

19.  The Home drawings were done by JA Doyle, LLC and these drawings are defective.

20.  The drawings do not list the proper size floor joist for the weight of the porcelain plank ceramic tile.

21.  The drawings do not show any bridging of the floor joists.

* * *

23.  Defendants had a duty to design the Home with floor joists sufficient to carry the weight of porcelain plank ceramic tile and to ensure that the floor joist did not move to prevent damage to the floor.

24.  As a result of Defendant, JA Doyle, LLC['s] negligence, in designing the floor joists, Plaintiffs have suffered damages.

* * *

28.  Defendants, individually, collectively, or in some combination failed to supervise the construction and allowed the Home to be built with inadequate floor joists and flooring system.

{¶ 28} Appellants argue that because the floor did not experience the loose tiles until 2019, their claim for negligent design is not time barred.  We disagree.  Under Ohio law, negligent design is classified as a professional negligence claim.  *See, e.g., Delta Fuels, Inc. v. Consol. Envt'l Servs., Inc.*, 6th Dist. Lucas No. L-11-1054, 2012-Ohio-

12.

2227, ¶ 27 (negligent design of a highway ramp was characterized as "professional negligence"). Professional negligence claims not treated elsewhere in the Revised Code are subject to the four-year statute of limitations set forth in R.C. 2305.09, which provides:

> [A]n action for any of the following causes shall be brought within four years after the cause thereof accrued:
>
> * * *
>
> (D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code[.]

*See Life Time Fitness, Inc. v. Chagrin Valley Engineering Ltd.,* No. 1:13CV566, 2014 WL 6879082, *2 (N.D. Ohio Dec. 4, 2014).

{¶ 29} A cause of action for professional negligence subject to R.C. 2305.09(D) accrues at the time the allegedly negligent act was committed, not at the time the damage occurs or is later discovered. *See Flagstar Bank, F.S.B. v. Airline Union's Mortgage Co.,* 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672 (reaffirming holding of *Investors REIT One*, 46 Ohio St.3d 176, 546 N.E.2d 206, that a cause of action for professional negligence accrues when the negligent act is committed, and not when damages actually occur or are later discovered); *see also James v. Partin*, 12th Dist. Clermont No. CA2001-11-086, 2002-Ohio-2602, ¶ 13 (Holding that "[b]ased on the case law, the use of

13.

the discovery rule or a "delayed damages" theory is not applicable to claims of professional negligence in a property damage case.").

{¶ 30} *Flagstar*'s application to negligent design claims was addressed by the court in *Life Time Fitness*. In *Life Time Fitness*, the defendant designed a parking lot that experienced heaving, cracking, and premature deterioration. The design was completed on April 8, 2008, but construction of the parking lot was not completed until November 2009. The parking lot failed in or around 2010, and the plaintiff commenced an action in 2013. The defendant argued that the claim was time-barred under R.C. 2305.09(D). The plaintiff claimed that the cause of action did not accrue until the damage occurred.

{¶ 31} In granting summary judgment in favor of the defendant, the court, relying on the holdings in *Flagstar* and *Investors REIT One,* concluded:

> [C]laims for professional negligence against engineers for design services accrue at the time the alleged negligent act was complete. Consequently, the cause of action accrues at the time the engineering design was complete. [Plaintiffs] do not dispute that [defendant] completed the design on April 8, 2008. Thus, the Plaintiffs had until April 8, 2012 to bring the cause of action. Plaintiffs failed to file until March 15, 2013, and are now barred from bringing their claims for professional negligence.

*Id.* at *3.

{¶ 32} In the instant case, appellants expressly premise their negligent design claim upon plans for the residence that were dated May 23, 2016. The plans were

14.

approved by the Lucas County Building Department as of May 27, 2016, the date that a building permit for the construction of the residence was issued. Appellants' complaint was not filed until July 13, 2020, which is indisputably more than four years after the plans were designed and approved. Thus, the trial court did not err in dismissing the negligent design claim as time-barred.

{¶ 33} Appellants' negligent supervision claim, which derives from the purportedly negligently designed plans, is similarly time-barred. Like the negligent design claim, the negligent supervision claim, which is expressly premised upon the purported negligence in the design of the residence, would have accrued at the time that the plans for the residence were complete and approved -- more than four years before appellants filed suit. In addition, Ohio law is clear that the discovery rule is unavailable to general negligence claims whose limitations period is governed by R.C. 2305.09(D). *See Investors REIT One*, 46 Ohio St.3d at 181, 546 N.E.2d 206 (Holding that "[t]he General Assembly's failure to include general negligence claims under the discovery rule set out in R.C. 2305.09 argues strongly that it was not the legislature's intent to apply the discovery rule to such claims."). Accordingly, the trial court did not err in dismissing appellants' claim for negligent supervision. Appellants' first assignment of error is found not well-taken with respect to their claims for negligent design and for negligent supervision.

15.

**{¶ 34}** For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                    JUDGE

Myron C. Duhart, P.J.
CONCUR.                            _____
                                                    JUDGE

Gene A. Zmuda, J.,
DISSENTS AND WRITES
SEPARATELY.

**ZMUDA, J., dissenting,**

**{¶ 35}** Because I disagree with the majority's conclusion that appellees were entitled to summary judgment on appellants' claim for breach of duty to build in a workmanlike manner, I must respectfully dissent. While I acknowledge that the test

outlined in *Mitchem* and reiterated in *Jones* governs this case, I disagree with the majority's application of that test to the facts in evidence in this case.

{¶ 36} In *Mitchem v. Johnson,* 7 Ohio St.2d 66, 218 N.E.2d 594 (1966), the Ohio Supreme Court imposed a duty on a builder-vendor to construct a real-property structure in a workmanlike manner and

> employ such care and skill in the choice of materials and work as will be commensurate with the gravity of the risk involved in protecting the structure against faults and hazards, including those inherent in its site. *If the violation of that duty proximately causes a defect hidden from revelation by an inspection reasonably available to the vendee, the vendor is answerable to the vendee for the resulting damages."* (Emphasis added.)

*Id.* at paragraph three of the syllabus.

{¶ 37} In *Jones v. Centex Homes,* 132 Ohio St.3d 1, 2012-Ohio-1001, 967 N.E.2d 1199, the court followed *Mitchem* and held that the duty to construct houses in a workmanlike manner applies to "all home builders" and such duty cannot be waived by a home buyer. *Id.* at ¶ 10 and 14.

{¶ 38} The test established in *Mitchem* and reiterated in *Jones* imposes liability upon a home builder who violates the duty to construct in a workmanlike manner leading to "a defect hidden from revelation by an inspection." *Id.* at ¶ 6, quoting *Mitchem* at paragraph three of the syllabus. Here, the majority determined the defect was the load-capability of the joists, and because *the joists* were exposed at the time of purchase, an

17.

inspection, reasonably available to appellants, would have revealed that load-capability. Had the flexing of the joists been observable, I would agree that a defect was apparent, requiring a reasonable inspection. The reasonable inspection cited by the majority, however, addresses a condition that was not observable until the tile flooring separated from the subfloor, and, according to the majority, required a *structural inspection,* such as was performed *after* the condition and structural defect became evident.

{¶ 39} While the majority indicates the reasonableness of a structural inspection is not the issue, because a structural inspection would have revealed the load-capability of the joists ("the size of the joists, their construction, and the absence of bracing"), and "such an inspection was readily available to appellants," such structural inspection constituted the reasonable inspection required by *Mitchem* and *Jones.* The majority cites to no authority to support such an expansive reading of the *Mitchem* test. In fact, beyond noting that appellants were able to hire an engineer to conduct the structural inspection after serious issues arose, the majority provides no basis for concluding that hiring an engineer is part of a "reasonable inspection" or an inspection that was "reasonably available." Indeed, taken to its logical conclusion, the majority's decision could compel prospective homebuyers to hire a host of specialized experts in the fields of structural and chemical engineering in order to protect their rights and preserve their ability to litigate claims against builders/contractors. I do not believe that the test annunciated in *Mitchem* and reiterated in *Jones* imposes this onerous duty on every homebuyer.

18.

{¶ 40} Appellants' complaint identifies two defects in the floor joists, namely that they were "undersized for the amount of weight they are carrying" and "the floor joist[s] did not have any bridging which decreases deflection." That the floor joists lacked bracing and were of a particular size was admittedly visible to any inspector. However, there is no evidence that an ordinary property inspector looking at the exposed joists would have known that bracing and larger joists was necessary to carry the weight of the tile flooring. Rather, the record suggests that this required further specialized knowledge and a more searching (and costly) inquiry from the structural engineer.

{¶ 41} Appellants eventually hired the structural engineer who was able to discover the defect in the floor joists, but the same defect was not apparent to the property inspector who looked at the floor joists prior to appellants' purchase of the home. The test articulated in *Mitchem* is whether the defective nature of the undersized and unbraced floor joists could have been discovered upon a reasonably available inspection. Appellants procured such an inspection prior to purchasing the home in this case, and that inspection revealed nothing about the inadequate weight-bearing capacity of the floor joists. *See Kimball v. Duy*, 11th Dist. Lake No. 2002-L-046, 2002-Ohio-7279, ¶ 22 (in context of caveat emptor argument, finding a genuine issue of material fact as to whether a defect was open to observation or discoverable upon reasonable inspection where the purchaser of the home obtained a home inspection that did not reveal the defect).

{¶ 42} There is no caselaw support for the notion that a vendee, in performing a "reasonable inspection," is required to hire a structural engineer to ascertain the load-capability of visible joists in order to satisfy the test of *Mitchell* and *Jones*. The fact that the joists were visible does not account for the fact that the weight resting upon the joists and the load-capability of those joists was an unknown issue at the time of purchase.

{¶ 43} Thus, I would find that the evidence in this case, when viewed in a light most favorable to appellants, establishes a genuine issue of material fact as to whether the defect was hidden from revelation by an inspection reasonably available to appellants. As a result, I find that summary judgment was not appropriate as to appellants' claim for breach of the duty to build in a workmanlike manner. Since the majority concludes otherwise, I must respectfully dissent.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

21.