OPINION
{¶ 1} Plaintiff-appellant, Fred Williams, appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), on plaintiff's negligence claim arising from plaintiff's slip and fall while he was incarcerated at the Southeastern Correctional Institute ("SCI"). Because the judgment of the Court of Claims is supported by competent, credible evidence, we affirm.
 {¶ 2} On July 10, 2003, plaintiff filed a complaint in the Ohio Court of Claims. The first claim alleged that ODRC negligently caused injury to plaintiff when plaintiff slipped on water on the floor caused by an unrepaired leak in the I-dorm roof at SCI. Plaintiff's second count alleged gross negligence, asserting ODRC deliberately and intentionally failed to correct the roof problem; plaintiff sought punitive damages and attorney fees on his second claim. The Court of Claims struck plaintiff's request for punitive damages and attorney fees, noting such damages could not be awarded in that court.
 {¶ 3} By order of September 9, 2003, the Court of Claims bifurcated the issues of liability and damages. Following a bench trial on May 24, 2004, the court issued a decision on October 6, 2004, concluding that ODRC had constructive knowledge of the leaky roof that gave rise to the water on which plaintiff slipped. The court nonetheless found "that the water on the floor was clearly visible and so open and obvious that it could have been avoided. For the foregoing reasons, the court finds that plaintiff has failed to prove, by a preponderance of the evidence, that [ODRC] breached any duty of care owed to him." (Decision, 5.)
 {¶ 4} The court further noted that plaintiff was under a duty to exercise reasonable care for his own safety. In that context, the court observed that many times a day plaintiff walked through the area where he ultimately slipped, and that the floor typically was wet due to showers, the water fountain, and the ice machine. Combining those elements with plaintiff's testimony that he was not looking where he was walking just before he slipped, the court concluded that plaintiff knew or should have known the floor was typically wet, that plaintiff failed to exercise reasonable care while traversing the area, and that plaintiff was more than 50 percent responsible for his fall. The Court of Claims thus entered judgment for ODRC. Plaintiff appeals, assigning two errors:
Assignment of Error No. 1: The trial court erred and abused its discretion in finding that plaintiff failed to prove by a preponderance of the evidence that defendant breached any duty of care owed him.
Assignment of Error No. 2: The trial court erred and abused its discretion in finding that plaintiff failed to exercise reasonable care while walking, and thus plaintiff was more than 50% responsible for his action.
 {¶ 5} In addition, ODRC filed a cross-assignment of error:
The Court of Claims erred in holding that DRC had constructive notice of the roof leak that resulted in water on the floor where Mr. Williams fell.
 {¶ 6} Plaintiff's first assignment of error asserts the judgment of the Court of Claims is against the manifest weight of the evidence. Plaintiff contends the record evidence does not support the court's determination that the puddle of water on which plaintiff slipped was an open and obvious hazard.
 {¶ 7} Judgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. Because plaintiff alleged ODRC was negligent, plaintiff was required to show the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75,77. "Credibility issues are not resolved as a matter of law, but are left to the trier of fact to determine." Ciccarelli v. Miller, Mahoning App. No. 03MA60, 2004-Ohio-5123, ¶ 35, citing Lehman v. Haynam (1956),164 Ohio St. 595.
 {¶ 8} Even though the prison officials at SCI were not insurers of plaintiff's safety, they generally owed plaintiff a duty of reasonable care and protection from harm. Briscoe v. Ohio Dept. of Rehab Corr.,
Franklin App. No. 02AP-1109, 2003-Ohio-3533. Nonetheless, "[u]nder the `open and obvious' doctrine, an owner or occupier of property owes no duty to warn * * * of open and obvious dangers on the property. * * * The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning, and that the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." (Citations omitted.) Duncan v. Capitol South Comm. Urban Redevelopment Corp., Franklin App. No. 02AP-653, 2003-Ohio-1273, ¶ 27, quoting Anderson v.Ruoff (1995), 100 Ohio App.3d 601, 604, appeal not allowed,73 Ohio St.3d 1414. The "open and obvious doctrine," where warranted, may be applied in actions against the ODRC with the result that ODRC would owe no duty to an injured inmate.
 {¶ 9} Here, the parties do not dispute that on February 21, 2003 plaintiff slipped and fell on a puddle of water on the floor of the I-dorm at SCI. According to plaintiff, he was on his way to the restroom. He came around the corner, where he ordinarily encountered the telephones on his right, the water fountain, the ice machine, and then the restroom. He did not reach the restroom on February 21, 2003, as he fell in front of the last telephone. When asked whether he remembered seeing any water on the floor before he fell, plaintiff responded, "No." (Tr. 31.)
 {¶ 10} From that point the parties diverge in the evidence put before the Court of Claims. Despite the dispute in the evidence, the record contains competent, credible evidence that supports the court's conclusions regarding the open and obvious nature of the puddle of water on the floor at SCI.
 {¶ 11} According to plaintiff's testimony, ODRC used to buff the concrete floor, so it was "like a shiny, and it was slick, that would make it slick anyways. And it's not rough, but it's shiny, because they used to buff the floor." (Tr. 39.) When asked if the floor was as slick as the tile he encountered in walking into the shower room, plaintiff replied "[p]retty much." Id. Plaintiff could not recall whether the floor surface was painted or sealed. Plaintiff further testified to leaks in the roof of the I-dorm, which later witnesses suggested began to occur following a large project in 2000 or 2001.
 {¶ 12} ODRC's evidence disputed much of plaintiff's testimony. Phillip McKnight, a unit manager at SCI, testified that the floors in the dorm were made of "regular cement" that was not painted or sealed. (Tr. 110.) According to McKnight, he never had a problem walking on the floor, never slipped, never noticed anyone having trouble walking over the floor while it was wet, and never noticed the floor to be slippery. Michael Lockhart, a correctional officer at SCI, testified sections of floors were buffed on a daily basis, but not all the floors were buffed each day. Rather, the floors were divided into zones and different zones were buffed throughout the week. When asked if buffing would polish the floor at all, he replied that the buffing "just brings up dirt that gets collected inside the pores of the concrete." (Tr. 133.) On re-direct examination, counsel asked if the concrete is porous, and Lockhart replied that it was. Asked if it was very slick, Lockhart answered no. When counsel asked, "The water, when it's on the floor, is it hard to see?", Lockhart replied, "No, if it gets wet, you're going to notice a darker coloration in that area." (Tr. 127.)
 {¶ 13} The testimony of inmate James Bell, though offered by plaintiff, corroborated Lockhart's testimony. Specifically, Bell testified that when the concrete was wet, it showed a stain. On cross-examination, counsel for ODRC stated, "But it's usually visible?" to which inmate Bell responded, "I mean, you would see the stain. * * * [I]f you're probably walking or something, you probably wouldn't pay attention to it, but you would — you can, you know, see a stain." (Tr. 68.)
 {¶ 14} The evidence, though disputed, also supports the court's conclusions about the lighting in I-dorm at SCI. Plaintiff testified the area where he fell was dark "all the time." (Tr. 29.) Similarly, inmate Bell testified that although the area is not as dark as depicted in plaintiff's exhibits, there "ain't really no light in that area." (Tr. 60.) By contrast, ODRC introduced a photograph showing a light over the spot where plaintiff fell. McKnight corroborated that evidence, testifying to a light beside the vent that "shines right down on that area." (Tr. 120.)
 {¶ 15} The Court of Claims, as the trier of fact, could resolve the disputed evidence and conclude that the area was sufficiently well lit to allow plaintiff to observe the water had he looked, as he would have seen a darker coloration or stain of the water on the unsealed, unpainted concrete floor. Whether or not such evidence would have warranted a finding of an open and obvious hazard as a matter of law, we cannot conclude the Court of Claims erred in finding an open and obvious hazard as a result of a trial that produced the noted facts of this case. As a result, we overrule plaintiff's first assignment of error.
 {¶ 16} Having overruled plaintiff's first assignment of error, we necessarily have found ODRC owed no duty to plaintiff regarding the water on which plaintiff slipped. Because ODRC owed no duty, plaintiff's second assignment of error, addressing the comparative negligence conclusion of the Court of Claims, is rendered moot. Similarly moot is ODRC's cross-assignment of error, contending the Court of Claims erred in finding ODRC had constructive knowledge of the leak giving rise to the puddle of water on the floor where plaintiff slipped.
 {¶ 17} Having overruled plaintiff's first assignment of error, rendering moot his second assignment of error and ODRC's cross-assignment of error, we affirm the judgment of the Ohio Court of Claims.
Judgment affirmed.
Petree and McGrath, JJ., concur.