[Cite as *Gilliam v. Rucki*, 2023-Ohio-1413.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Dale L. Gilliam                                    Court of Appeals No.  L-22-1107

      Appellant                              Trial Court No.  CI0202101301

v.

Cynthia Rucki                                      **DECISION AND JUDGMENT**

      Appellee                               Decided:  April 28, 2023

* * * * *

James L. Murray and William H. Bartle, for appellant

John A. Rubis and Jonathon Angarola, for appellee

* * * * *

**OSOWIK, J.**

{¶ 1} In this premises liability action, the plaintiff-appellant, Dale Gilliam, appeals an April 14, 2022 judgment of the Lucas County Court of Common Pleas, which granted summary judgment in favor of the defendant-appellee, Susan Rucki.  As set forth below, we affirm.

## I. Background and Facts

{¶ 2} This case arises from an injury sustained by Gilliam while in defendant's Toledo home on October 19, 2019. Gilliam is a self-employed contractor and was hired by defendant to service a bathtub that did not have hot water.

{¶ 3} According to the complaint, upon arriving at defendant's home, Gilliam "was shown into" the first-floor bathroom. Gilliam alleges that, while he was inspecting the bathtub valve, the defendant "entered the bathroom and removed a crawl space hatch or cover immediately next to the bathtub with no notice or warning." When Gilliam finished inspecting the valve, he "turned and fell into the 6 foot deep crawl space." As a result of the fall, Gilliam suffered multiple rub fractures and a knee injury. Gilliam claims that he was unaware that defendant had opened up the hatch and "was given no warning that [she] was planning to do so." In his sole claim for relief, Gilliam alleges that Rucki was negligent in failing to warn or notify him that "she was going to remove" the hatch door and that, as a direct and proximate result of her negligence, he was injured.

{¶ 4} After filing an answer and conducting discovery, defendant moved for summary judgment. Defendant's motion was based on Gilliam's deposition testimony and the opinion of her expert witness, Richard Kraly, a licensed architect. Defendant argued that the "large crawl space area" was an open and obvious hazard that obviated any duty to warn Gilliam. Alternatively, defendant argued that, even if she owed a duty to Gilliam, his claim would still fail as a matter of law, because his negligence—"in not paying attention as he traversed [the] bathroom"—outweighed any negligence by her.

2.

{¶ 5} Gilliam moved to strike the expert's affidavit and report. Gilliam argued that Kraly's conclusions were based upon hearsay statements from defendant and further that Kraly had rendered an opinion "on a legal issue reserved for judicial determination," specifically that the hazard was open and obvious. Gilliam also objected to defendant's motion for summary judgment.

{¶ 6} By judgment dated April 14, 2022, the trial court found Gilliam's motion to strike well-taken, in part. It indicated that it would "disregard any hearsay, legal opinions or legal conclusions" made by Kraly and would "only consider that which is properly before the court." In that same judgment, the trial court granted defendant's motion for summary judgment, dismissing Gilliam's case. Gilliam appealed and assigns two errors for our review:

> A. The trial court erred in granting summary judgment in favor of the defendant in its 4-13-2022 opinion and order, finding the open and obvious doctrine applied because plaintiff witnessed defendant removing the hatch and concluding alternatively that plaintiff's own negligence outweighed any negligence attributable to the defendant.
>
> B. The trial court erroneously reached these conclusions by failing to construe the evidence in the light most favorable to the plaintiff. Assuming a conflict between plaintiff's interrogatory answers and his deposition testimony, the trier of fact must weigh all the answers and resolve the conflict. The plaintiff did not witness defendant removing the hatch.

3.

## II. Summary Judgment

{¶ 7} Appellate review of a trial court's decision to grant summary judgment is de novo. *Chalmers v. HCR ManorCare, Inc.*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, ¶ 21; *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29. Pursuant to Civ.R. 56(C),

> Summary judgment shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, written admissions, affidavits,
> transcripts of evidence, and written stipulations of fact, if any, timely filed
> in the action, show that there is no genuine issue as to any material fact and
> that the moving party is entitled to judgment as a matter of law. No
> evidence or stipulation may be considered except as stated in this rule. A
> summary judgment shall not be rendered unless it appears from the
> evidence or stipulation, and only from the evidence or stipulation, that
> reasonable minds can come to but one conclusion and that conclusion is
> adverse to the party against whom the motion for summary judgment is
> made, that party being entitled to have the evidence or stipulation construed
> most strongly in the party's favor.

*Id.; See also Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 8} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that

4.

affirmatively demonstrate the absence of a genuine issue of material fact—not the reliance on conclusory assertions that non-movant has no evidence to prove its case—regarding an essential element of the non-movant's case. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 6th Dist. Sandusky No. S-16-041, 2017-Ohio-4467, ¶ 14. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact for trial in accordance with Civ.R. 56(E). *Id.* A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Id.*

### III. Premises Liability Law

{¶ 9} Premises liability is a form of negligence, which generally requires the plaintiff to establish: (1) a duty of care by the defendant to the plaintiff (2) breach of that duty, and (3) injury caused directly and proximately resulting from the breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). Whether or not a duty exists is a question of law for the court. *Id.* There is no formula for whether a duty exists as a matter of law. *Id.* Appellate review of a question of law is de novo. *Sanborn v. Hamilton Cty. Budget Comm.*, 142 Ohio St.3d 20, 2014-Ohio-5218, 27 N.E.3d 498, ¶ 3.

{¶ 10} The duty that an owner or occupier of premises owes to one who is injured on those premises is governed by the relationship between the parties. *Light v. Ohio University*, 28 Ohio St.3d 66, 67, 502 N.E.2d 611 (1986). "That relationship will fall into

5.

one of three categories: invitee, licensee, or trespasser." *Turner v. Cathedral Ministries*, 6th Dist. Sandusky No. S-14-020, 2015-Ohio-633, ¶ 10 (6th Dist.). A business invitee is an individual who is "rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest." (Citation omitted.) *Clark v. BP Oil*, 6th Dist. Lucas No. L-04-1218, 2005-Ohio-1383, ¶ 10. "A business owner ordinarily owes its invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Id.* In this case, the parties agree that Gilliam was a business invitee.

{¶ 11} A premises owner is not an insurer of a business invitee's safety and is under no duty to protect a business invitee from dangers known to the invitee "'or are so obvious and apparent to such invitee that he may reasonably be expected to discover [the dangers] and protect himself against them.'" *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203-204, 480 N.E.2d 474 (1985), quoting *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus.

{¶ 12} The open-and-obvious doctrine concerns the first element of a negligence claim, namely, whether a duty exists. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5, 8. If the doctrine applies, it "obviates the duty to warn and acts as a complete bar to any negligence claims." *Id.* "A hazard is considered to be open and obvious when it is in plain view and readily discoverable upon ordinary inspection." *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.*, 6th Dist. Lucas No. L-08-

6.

1187, 2009-Ohio-6677, ¶ 68. As explained by this court in *Semprich v. Cty. of Erie*, 6th Dist. Erie No. E-12-070, 2013-Ohio-3561,

> Courts must consider whether the object or danger itself was observable. Even when an invitee does not actually see the object or danger until after he or she falls, no duty exists when the invitee could have seen the object or danger if he or she had looked. The issue of whether a risk was open and obvious may be decided by the court as a matter of law when only one conclusion can be drawn from the established facts. But, where reasonable minds could reach different conclusions as to the obviousness of the risk, the issue should be resolved by a jury.

*Id.* ¶ 12.

## A. The trial court opinion

{¶ 13} The trial court found that defendant owed no duty to warn Gilliam because the hazard posed by the floor opening was "open and obvious." It said,

> The opening was large enough that [Gilliam] fell through it. There is no indication that the crawl space was open when Plaintiff entered the bathroom. Rather, after entering and while inspecting the bathtub, [Gilliam] witnessed Defendant removing the hatch on the floor. There is no evidence that the area was then covered up creating a hidden danger. There is no evidence of obstructions to his view. If Plaintiff had looked, he would have seen the opening of the crawl space before he fell into it. He

7.

knew the space was open.  * * * Defendant did not breach any duty owed to Plaintiff.  (J.E. at 5).

## B.  The floor opening was an open and obvious hazard.

{¶ 14} In his first assignment of error, Gilliam challenges the trial court's application of the open and obvious doctrine to his case.  He further complains—in his second assignment of error—that the trial court failed to construe the evidence in the light most favorable to him.  We review the arguments together, but first we review the evidence in this case.

{¶ 15} Gilliam testified that, as the problem was described to him, he suspected that the valve servicing the tub was likely faulty.  So, upon entering the bathroom, Gilliam looked for the valve, which he easily spotted "on the left side wall in the back" of the bathroom.  Gilliam estimated that the distance between the entryway of the bathroom to the valve was "[a]bout 4 feet."

{¶ 16} As Gilliam walked to the tub and valve, he walked over a bathroom rug. During his deposition, Gilliam testified that, in retrospect, he "had to have" traversed over the trap door, but—because it was covered by a rug—he had no knowledge of it.

{¶ 17} Once he reached the tub, Gilliam began to examine the valve.  Gilliam straddled the tub by putting his right foot in the tub, his left foot on the floor outside the tub, and sat "on the edge."  This exchange followed:

Q. How long did it take you to look * * * at the valve?

8.

A. Just a few seconds.

Q. While you were looking at the valve, did you hear anything behind you * * * or to your left side of you to indicate something had changed in the bathroom?

A. * * * I heard [a] racket or something going on. I don't know what it was. I was concentrating on the valve, on the job she hired me to do.

Q. To your knowledge, * * * was [she] in the vicinity while you were looking at the tub?

A. She [led] me into the bathroom. At one point she was ahead of me. She stepped to the side to let me get in the tub, and that's when I seen she lifted the top off.

Q. Now were you having conversations with her while you were looking at the valve?

A. No. I just [examined] * * * what the valve looked like so if I was to replace it, like I said, it was similar to what she had.

Q. All right. So after you fiddle with the water a bit to confirm there was no hot water and get the * * * maker's mark [of the valve] * * * what happened next?

A. I got off the edge of the tub to walk out and stepped into a hole.

Q. All right. Where was the hole in relation to the tub?

9.

A. I would say about three feet.

Q. Three feet away from it?

A. Roughly, yes.

Q. Did you have to walk three feet before you fell into the hole?

A. I would say one step I took and down I went.

Q. To be clear, you did not have to step over the hole before you got to the bathtub, is that correct?

A. Correct.

Q. To the best of you recollection, that cover or that hole, that was there when you climbed into or straddled the tub?

A. Yes. I walked across it. Had to have been. She had rugs down. The first I noticed there were rugs on the floor, which being a plumber - - no offense to your client - - that's sort of the health indicator of the bathroom. If you see a rug, it's generally going to be somewhat dirty because rugs and bathrooms in my mind aren't a good mix. I noticed the rug at the tub, walked across the floor, and looked at the tub.

Q. Got it. You recall walking over or stepping on or over a rug, is that correct?

A. Yes.

Q. Do you remember what the rug looked like?

A. Green, kind of off 70s green.

Q. Okay. When you fell into the hole, tell me what happened. What happened to your body?

A. Well, I got like just a supercharge of energy in my chest [like] what's going on, because there's nothing there, you know, and before you know it I'm on the side trying to pull myself out. It just happened so fast. Really nothing to think about other than: what's going on?

Q. Right. Was she right there within the vicinity, my client?

A. No, she wasn't.

Q. What happened next?

A. I pulled myself out of the hole and laid on the floor and asked her - - she came running. She heard me. I asked her to call 911, which she did.

Q. Did you have any conversations with her there at the scene regarding what happened involving the hole in the bathroom.

A. Well, she repeatedly said: I should have never opened it was what come out of her mouth at least three times during the whole incident.

Q. * * * Do you know why she opened the crawl space?

A. I have no idea. (Gilliam Depo. at 20-24).

{¶ 18} There is no disagreement that the hazard in this case, i.e. the hole, was "created *after* [Gilliam] entered" the bathroom. (Gilliam's Brief at 8; emphasis added). Indeed, the only real dispute is whether Gilliam *saw* defendant remove the hatch. Again, the trial court found—based upon his deposition testimony—that Gilliam "witnessed

11.

Defendant remov[e] the hatch" and therefore "knew the space was open." Gilliam insists that neither is true. That is, he denies that he "saw" or "knew" that defendant had removed the hatch, *until* he stepped into the hole. He maintains that the evidence supports that conclusion, specifically his response to Interrogatory No. 19, in which he asserted that defendant "removed [the] hatch * * * *unbeknownst to me*." (Emphasis added.) Gilliam contends that a "fair reading" of his "*entire* deposition * * * in conjunction with his answer to Interrogatory No. 19" establishes that, at most, he "heard a racket" behind him but "[didn't] know what it was." On appeal, Gilliam argues that the trial court failed to view the evidence in the light most favorable to him, specifically because it did not consider his interrogatory response and more broadly because it failed to resolve any conflict, as to whether he observed defendant remove the trap door—in his favor.

{¶ 19} As set forth below, we find that, even if the trial court failed to construe evidence on that particular point in Gilliam's favor, any such error was harmless because, whether or not Gilliam observed the hatch being removed is not a material fact. That is, whether or not Gilliam saw defendant remove the trap door, he concedes that it was removed and the hole was observable, *before* he "turned to walk away from the tub" toward the door. He further concedes that the hole was not hidden, concealed from view, or undiscoverable. Moreover, Gilliam does not allege that there were any distractions that diverted his attention away from the opening in the floor. Indeed, he specifically denied that he was engaged in conversation with the defendant or that

12.

defendant was even in the vicinity of the bathroom at the time. Again, the only conclusion that can be drawn is that, from the time defendant "turned" from the tub and proceeded to walk the "three feet" between the tub and the hole, there was nothing that contributed to Gilliam's fall, other than his failure to notice it.

{¶ 20} "Open-and-obvious hazards are those hazards that are not concealed and are discoverable by ordinary inspection." *Lykins v. Fun Spot Trampolines*, 172 Ohio App.3d 226, 2007-Ohio-1800, 874 N.E.2d 811, ¶ 24 (12th Dist.); *see also, Shipman v. Papa Johns,* 3d Dist. Shelby No. 17-14-17, 2014–Ohio–5092, ¶ 22 ("Open-and-obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection[.]"). The facts establish that, although Gilliam may not have seen the hole, nothing prevented it from being seen. Thus, we agree with the trial court that the hole was not "covered up" or "obstruct[ed]" and that "if [Gilliam] had looked, he would have seen the opening of the [hole] before he fell into it." These facts are material to whether the hazard was open and obvious, not Gilliam's awareness. *Accord Howard v. Meat City Inc.,* 3d Dist. Allen No. 1-16-32, 2016-Ohio-7989, ¶ 19 (Hole in asphalt parking lot was open and obvious where the plaintiff admitted that she could have seen the hole had she looked. "The fact that [plaintiff] was not looking at the pavement does not alter the condition from being open and obvious.").

{¶ 21} In a strikingly similar case, the plaintiff-electrician was called to a farm to service an electrical issue and was injured when he fell into a "well pit." *Williamson v. Geeting,* 12th Dist. Preble No. CA2011-09-011, 2012-Ohio-2849, ¶ 8-10. The electric

13.

panel was located in a barn, and beneath the electric panel was the "well pit" that measured two and one-half feet square and five feet deep. Prior to the plaintiff's visit, the homeowner had removed the floor boards that covered the well pit on the assumption that access to a pump located in the pit would be necessary. Upon entering the barn, the plaintiff spotted the electric panel on the wall, which he estimated was about ten feet from the entryway. As he walked toward the panel, he fell into the hole. In affirming summary judgment in favor of the homeowner, the court of appeals found that "[t]he record indicates the open well pit was in plain view, observable to the naked eye and was observable to [the electrician] had he looked where he was walking. Therefore, reasonable minds could only conclude that the open well pit was an open and obvious hazard." *Id.* at ¶ 20.

{¶ 22} Conversely, the facts in the instant case are *unlike* those in *Sabitov v. Graines,* 177 Ohio App.3d 451, 2008-Ohio-3795, 894 N.E.2d 1310 (8th Dist), where a customer fell though an open trapdoor, located in the floor of a deli. The trapdoor was attached to a ladder that led to a basement, and the customer died when she fell into the opening. The court of appeals found that an issue of fact existed as to whether the opening in the floor was an open and obvious danger, in part, because the record evidence indicated that the trapdoor was a hidden hazard that was "not visible as a person walks through the corridor towards the toilet facility." Likewise, in *Hill v. Mullins,* 2d Dist. Montgomery No. 27127, 2017-Ohio-1302, a contractor was touring a home under renovation. Prior to the tour, the homeowners had removed two walls and a doorway,

14.

that had enclosed a staircase leading to the basement.  A third wall was kept in place. The contractor was injured when she stepped around the remaining wall and "stepped into the opening in the floor."  According to the contractor's testimony, she would not have seen the hole, even if she had been looking, "due to the [remaining] wall and [the homeowner's] presence immediately in front of her." *Id.* at ¶ 6.  The appellate court found that, although the hole may have been "prominent" and "observable," the plaintiff approached the opening in the floor "from a direction in which the hole might have been obscured by the wall alongside it."  The court found that these circumstances presented a genuine issue of material fact as to whether the hole was open and obvious from the plaintiff's vantage point. *Accord, Asher v. Glenway Real Estate, LLC,* 1st Dist. Hamilton No. C-180663, 2019-Ohio-4851, ¶17 ("Once the hazard [was] discovered, the invitee [had] already encountered it [which] as a matter of law [necessitates a finding that] the hazard encountered by [the plaintiff] was not open and obvious."); *Rice v. Kroger,* 6th Dist. Lucas No. L-19-1175, 2020-Ohio-2654, ¶ 15 ("Reasonable minds could disagree whether an empty pallet located next to a produce bin would be hidden from view until a patron was nearly upon it and whether it was readily apparent to a reasonable patron in the process of shopping who was traveling in the same direction as the [plaintiff].")

{¶ 23} Gilliam urges the court not to apply the open and obvious doctrine, under the authority of *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 597 N.E.2d 504 (1992) because, he argues, the defendant in that case and in the instant case were responsible for creating the dangerous condition.  In *Simmers*, the Ohio Supreme Court

15.

held that "an independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property." *Id.* The court concluded that because the defendant "had no property interest" in the premises where the plaintiff was injured, ordinary negligence law applied. Given that the defendant herein *is* the property owner, we find that *Simmers* does not apply.

{¶ 24} "The relevant issue [in these cases] is not whether an individual observes the condition, but whether the condition is capable of being observed." (Citations omitted.) *Hill* at ¶ 15. Here, because the hole was not obscured and was capable of being observed by Gilliam, we find that there is no genuine issue of material fact that the hazard, created by the removal of the trap door, was an open-and-obvious danger.

### IV. Comparative Negligence

{¶ 25} In its decision, the trial court also found that "[Gilliam's] own negligence outweighs any purported duty attributable to the Defendant." (J.E. at 5). Gilliam argues—also in his first assignment of error—that the issue of comparative negligence is an issue of fact for the jury to resolve, specifically, as to whether his negligence was greater than defendant's.

{¶ 26} Where the issue of duty and its breach are firmly established, the issue of comparative negligence "arguably comes within the domain of the jury." *Trutza v. Cleveland,* 102 Ohio App.3d 371, 376–77, 657 N.E.2d 327 (8th Dist.1995), citing

16.

*Simmers* at 645.  However, our finding in this case—that defendant did *not* owe a duty of care to Gilliam—renders the issue of comparative negligence moot. *Tipton v. Bernie's Elec. Sales & Service, Inc.,* 6th Dist. Williams No WM-03-021, 2004-Ohio-5249, ¶ 42; *see also Williams v. Ohio Dep't. of Rehab. & Corr.*, 10th Dist. Franklin No 04AP-1193, 2005-Ohio-2669, ¶ 16 ("Because ODRC owed no duty, plaintiff's second assignment of error, addressing the comparative negligence conclusion of the Court of Claims, is rendered moot.").  Because we find that there was no duty on the part of defendant, the issue of comparative negligence is moot.

{¶ 27} Finally, Gilliam complains that the trial court improperly considered the "legal opinions and credibility determinations" rendered by defendant's expert, Peter Kraly.  Gilliam did not assign this issue as an error for our review.  Under App.R. 12(A)(1)(b), an appellate court must determine an appeal based on the assignments of error set forth in the briefs.  *See, e.g., State v. Roberson*, 6th Dist. Lucas No. L-16-1131, 2017-Ohio-4339, ¶ 103.  An appellate court rules on assignments of error only, and cannot address mere arguments.  *Id.* Accordingly, because Gilliam did not assign as error the trial court's purported consideration of Kraly's legal opinions and credibility determinations, we decline to address his argument.  We do note that that trial court specified in its final judgment that it disregarded "any hearsay" and "legal opinions or legal conclusions made by [Kraly]."  Gilliam points to no evidence that the trial court did otherwise.

17.

## V. Conclusion

**{¶ 28}** Because we find that the opening in the floor was an open and obvious danger, defendant had no duty to warn Gilliam of the hazard in this case. Accordingly, we find that the trial court's grant of summary judgment in favor of the defendant was appropriate. In light of our finding, Gilliam's claim, regarding comparative negligence, is moot, and we decline to address it. For these reasons, we find Gilliam's first and second assignments of error not well-taken.

**{¶ 29}** The judgment of the Lucas County Court of Common Pleas is affirmed. Gilliam is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                        _____

                                              JUDGE

Gene A. Zmuda, J.                          _____

Myron C. Duhart, P.J.                                JUDGE
CONCUR.

                                              _____

                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.