**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| DAVID F. WELCH<br><br>Plaintiff<br><br>v.<br><br>OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION<br><br>Defendant | Case No. 2023-00655JD<br><br>Judge Lisa L. Sadler<br>Magistrate Adam Z. Morris<br><br><u>DECISION</u> |

{¶1} Before the Court for a non-oral hearing is Defendant's Motion for Summary Judgment pursuant to Civ.R. 56 and L.C.C.R. 4(D). For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.

**Standard of Review**

{¶2} Motions for summary judgment are reviewed under the standard set forth in Civ.R. 56(C):

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St. 3d 280, 292 (1996). To meet this initial burden, the moving party must be able to point to evidentiary materials of the type listed in Civ.R. 56(C). *Id*. at 292-293.

{¶3} If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden outlined in Civ.R. 56(E):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

**Facts**

{¶4} Defendant, Ohio Department of Rehabilitation and Correction (ODRC), submitted the deposition transcript of Plaintiff, David F. Welch, with its Motion for Summary Judgment. Plaintiff did not attach any Civ.R. 56(C) evidence to his Response in Opposition but relies on Plaintiff's uncontroverted deposition testimony.

{¶5} Accordingly, the relevant pleadings and evidence submitted, viewed in a light most favorable to Plaintiff, show the following:

{¶6} On December 2, 2022, Plaintiff was an inmate in the custody and control of Defendant at its Marion Correctional Institution (MCI) when he slipped and fell next to the dishwasher while working in the MCI kitchen. (Complaint ¶ 1, 10; Welch Deposition 11:9-18, 13:8-16, 14:14-16, 20:23-21:10, 39:1). After his fall, Plaintiff "looked over at the spot on the floor and observed a clear fluid, possibly water, puddling." (Complaint ¶ 12). Plaintiff laid in the puddle before returning to his feet. (Welch Dep. 13:15).

{¶7} Plaintiff was assigned to the kitchen by Defendant, but Aramark runs the kitchen.[1] (Welch Dep. 30:20-22, 40:8-11). Prior to his fall, Plaintiff had managed the kitchen for eighteen months, which consisted of working five days a week preparing breakfast, lunch, and dinner as a cook. (Welch Dep. 14:17-22, 15:11-14, 16:14-14, 19:1-4). Plaintiff had walked through the dishwasher room but had never specifically worked in that room. (Welch Dep. 16:3-24). Prior to his fall, Plaintiff had walked through the dishwasher room approximately three or four times that morning but did not see a puddle of water when he passed through nor see anyone else slip or lose their footing in the area of his fall. (Welch Dep. 21:23-22:1, 22:12-19, 24:3-6).

{¶8} Plaintiff fell at 10:00 a.m. while cleaning up after breakfast. (Welch Dep. 17:22-18:20). Plaintiff was carrying a pan with leftovers from breakfast to the dishwasher. (Welch Dep. 18:11-20). The pan was stainless steel and approximately 18 inches by three foot or two and a half foot. (Welch Dep. 24:13-18).

{¶9} Plaintiff went through the dishwasher room because there was a clear path straight ahead and another person was pushing a cart in the hallway, which was Plaintiff's normal path. (Welch Dep. 25:9-26:1). Plaintiff was looking to the right around the dishwasher to make sure another person was not going to come in front of him, but he was not looking down. (Welch Dep. 24:20-25:1, 26:2-18). However, there was nothing obstructing his view of what was on the floor, nothing in his path, no one standing there, and no commotion. (Welch Dep. 25:2-26:1). Plaintiff ultimately fell on the back, unloading side of the dishwasher where workers would receive the dry dishes. (Welch Dep. 20:23-21:10).

{¶10} Prior to his fall, the kitchen area did not have any signs cautioning about wet floors. (Welch Dep. 19:7-20:15). Plaintiff does not know where the water came from, but it was in proximity to the dishwasher. (Welch Dep. 26:19-27:6, 29:2-12). Prior to his fall, Plaintiff did not know of any issues with the dishwasher leaking or a complaint of puddles on the side of the dishwasher where he fell. (Welch Dep. 17:16). Although Plaintiff had seen standing water there before when the dishwasher was used, the dishwasher was

---

[1] The evidence currently before the Court does not explicitly establish the relationship between Defendant and Aramark.

not running when he fell.  (Welch Dep. 22:5-10, 31:3-20).  Plaintiff had never seen anyone fall in that area.  (Welch Dep. 29:13-15).

{¶11} Plaintiff believes work orders had been placed by Aramark to fix the dishwasher leaking on the other side of the dishwasher from where he fell, but he had not input any work order related to water issues, only heating issues.  (Welch Dep. 29:16-31:2, 38:7-9).  But Plaintiff has no personal knowledge of whether work orders had actually been entered or put through by Aramark.  (Welch Dep. 37:20-38:16).

**Law and Analysis**

{¶12} Defendant asserts that it is entitled to summary judgment because "any alleged puddle of water was an open and obvious condition, [Defendant] owed no duty to plaintiff."  (Defendant's Motion, p. 2).  Defendant alleges that "[w]ater on the floor next to a dishwashing machine in the MCI kitchen is an open and obvious condition for which [Plaintiff] failed to exercise reasonable care to ensure his own safety."  (Defendant's Motion, p. 5).

{¶13} Plaintiff, however, asserts that Defendant's reliance on the open and obvious doctrine fails to meet its Civ.R. 56(C) burden because "genuine issues of material fact exist as to whether [Defendant] breached its duty of care."  (Plaintiff's Response, p. 2).  Plaintiff argues that "[t]here were no wet floor signs, barriers, or warnings of any kind[,]" "the facts of this case show a dangerous condition that was neither obvious nor warned of, in a work environment where [Plaintiff] had no control over maintenance or signage[,]" "[t]he leak was part of a long-standing and known problem, unaddressed despite repeated complaints[,]" and "[Plaintiff] was performing assigned duties, under direction, in a hazardous space created and controlled by [Defendant]."  (Plaintiff's Response, p. 2).

{¶14} To prevail on a claim for negligence, Plaintiff must prove by a preponderance of the evidence that "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury." *Jenkins v. Ohio Dept. of Rehab & Corr.,* 2013-Ohio-5106, ¶ 6 (10th Dist.).

{¶15} As it relates to those who are incarcerated, "the state owes a common-law duty of reasonable care and protection from unreasonable risks."  *Id.* at ¶ 8.  Reasonable care is "defined as the degree of caution and foresight that an ordinarily prudent person

would employ in similar circumstances." *Id*. Exercising reasonable care includes the duty "to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 2004-Ohio-5545, ¶ 16 (10th Dist.). As it relates to an inmate performing labor for the state, "the state's duty must be defined in the context of those additional factors which characterize the particular work performed." *Id.* Although the state's duty varies with the particular circumstances, the state "is not an insurer of inmate safety, and the special relationship between the state and the inmate does not expand or heighten the duty of ordinary reasonable care." *Id.* If ODRC "becomes aware of a dangerous condition in the prison, it is required to take the reasonable steps necessary to avoid injury to prisoners." *Jenkins* at ¶ 8. But inmates "are also required to use reasonable care to ensure their own safety." *Id.*

{¶16} "The 'open and obvious doctrine,' where warranted, may be applied in actions against the ODRC with the result that ODRC would owe no duty to an injured inmate." *Williams v. Ohio Dept. of Rehab. & Corr.*, 2005-Ohio-2669, ¶ 8 (10th Dist.); *but see Dean v. Ohio Dept. of Rehab. & Corr.*, 1998 Ohio App. LEXIS 4451, *4-5 (10th Dist. Sept. 24, 1998) (the court declined to apply the open and obvious doctrine where an inmate-worker was ordered by defendant to perform a task where he could not avoid the hazard that caused his fall).

{¶17} The open and obvious doctrine is premised on the rational that "the open and obvious nature of the hazard itself serves as a warning, and that [ODRC] may reasonably expect that [inmates] will discover those dangers and take appropriate measures to protect themselves." *See Williams* at ¶ 8, quoting *Duncan v. Capital South Comm. Urban Redevelopment Corp.*, 2003-Ohio-1273, ¶ 27 (10th Dist.). "Open-and-obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection." *Thompson v. Ohio State Univ. Physicians, Inc.*, 2011-Ohio-2270, ¶ 12 (10th Dist.). However, an individual "does not need to observe the dangerous condition for it to be an 'open-and-obvious' condition under the law; rather, the determinative issue is whether the condition is observable." *Id*. at ¶ 10. "Even in cases where the plaintiff did not actually notice the condition until after he or she fell, [the Tenth District Court of Appeals] has found no duty where the plaintiff could have seen the

condition if he or she had looked." *Cooper v. Meijer Stores, L.P.*, 2007-Ohio-6086, ¶ 13 (10th Dist.), citing *Lydic v. Lowe's Cos., Inc.*, 2002-Ohio-5001, ¶ 10 (10th Dist.).

{¶18} The open and obvious doctrine requires some expectation of encountering the danger or sufficient amount of time to perceive the danger before it was encountered in order to be able to take corrective action and avoid it. *Kraft v. Dolgencorp Inc.*, 2007-Ohio-4997, ¶ 35, 38 (7th Dist.). When considering whether the danger is open and obvious, the focus is on the ability of a reasonable person to perceive the danger under the circumstances, not on the actions of the individual plaintiff. *Armstrong v. Best Buy Co., Inc.*, 2003-Ohio-2573, ¶ 11, 13.

{¶19} Upon review, the Court finds that the Civ.R. 56(C) evidence submitted by Defendant establishes that there is no genuine issue of material fact as to whether Defendant breached a duty owed to Plaintiff and whether the puddling water was an open and obvious danger at the time of the fall.

{¶20} While Plaintiff fell in a clear liquid, Plaintiff states that it was observable to him when he looked over after his fall, and further states that he had a clear path that was straight ahead and there was nothing obstructing his view of what was on the floor and no commotion. And Plaintiff had experienced puddling water in that area around the dishwasher prior to his fall, even though he had not seen any that morning. Plaintiff's failure to observe the condition because he did not look down before stepping does not render the hazard unobservable. *Cooper* at ¶ 10 ("a pedestrian's failure to avoid an obstruction because he or she did not look down is no excuse."). Therefore, based on the Civ.R. 56(C) evidence, the only reasonable conclusion is that the puddling water was open and obvious because it was not hidden, concealed from view, or undiscoverable upon ordinary inspection.

{¶21} Plaintiff's Response, moreover, appears to concede the open and obvious hazard of the puddling water and, instead, focuses on exceptions to the open and obvious doctrine. (Plaintiff's Response, p. 7-10 ("In the instant matter, [Defendant] argues that the condition [Plaintiff] encountered – water leaking from a dishwasher – was open and obvious. However, under Ohio law, the open and obvious doctrine is not absolute, and it does not preclude liability where exceptions such as attendant circumstances, lack of warning, or constructive notice apply.")). While Plaintiff states in relation to his lack of

warning defense that "[e]ven if water had been visible (which [Plaintiff] disputes)," Plaintiff does not specifically articulate any facts from the evidence currently before the Court to create a genuine issue of material fact related to whether the puddling water constituted an open and obvious hazard before arguing the application of any of his exceptions. (Plaintiff's Response, p. 8).

{¶22} Accordingly, Defendant has met its initial burden as the moving party seeking summary judgment pursuant to Civ.R. 56(C). And, as such, the Court shall address Plaintiff's arguments related to exceptions to the open and obvious doctrine, attendant circumstances, lack of warning, and constructive notice, pursuant to his reciprocal burden under Civ.R. 56(E).

*Attendant Circumstances*

{¶23} "In certain circumstances, the presence of 'attendant circumstances' may preclude the application of the open-and-obvious doctrine." *Haynes v. Mussawir*, 2005-Ohio-2428, ¶ 22 (10th Dist.). "To serve as an exception to the open and obvious doctrine, an attendant circumstance must be 'so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise.'" *Mayle v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-2774, ¶ 20 (10th Dist.), quoting *Cummin v. Image Mart, Inc.*, 2004-Ohio-2840, ¶ 10 (10th Dist.). Attendant circumstances are those that "divert the attention of the individual and significantly enhance the danger of the hazard and thus contribute to the fall", including, but not limited to, "poor lighting, a large volume of pedestrian traffic, the visibility of the defect, the overall condition of the walkway, and whether the nature of the site is such that one's attention would be easily distracted." *Jenkins*, 2013-Ohio-5106 at ¶ 16.

{¶24} Plaintiff states that "he was carrying a large tray and was diverted by another inmate pushing a cart, which caused [him] to not take his usual route but instead walked through the dishwasher area[,]" and "[his] attention was reasonably directed toward avoiding other workers in a high-traffic kitchen environment, rather than scanning the floor for a hazard that lacked any warning signage." (Plaintiff's Response, p. 7-8). However, upon review, the evidence currently before the Court fails to establish attendant

circumstances that would divert Plaintiff's attention and significantly enhance the danger of the puddling water.

{¶25} Plaintiff relies on the Eleventh District Court of Appeals holding in *Hudspeth v. Cafaro Co.*, 2005-Ohio-6911 (11th Dist.), in which a patron carrying packages in a crowded mall could constitute attendant circumstances. In *Hudspeth*, the Eleventh District, in reversing the trial courts decision on summary judgment and finding that there was a genuine issue of material fact regarding attendant circumstances, stated that "[t]he circumstances demonstrate that an invitee cradling several packages in a shopping mall while attempting to negotiate a dense crowd of mall shoppers on the day after Thanksgiving would not necessarily discover a collapsed 'wet floor' sign as she exited a store." *Hudspeth* at ¶ 2-4, 20-22.

{¶26} Here, however, unlike in *Hudspeth*, there is no dense crowd of people creating an attendant circumstance that otherwise affected the hazard that caused Plaintiff to fall. Plaintiff uses the term "high-traffic kitchen environment" and states that, while he was carrying the large pan, he was looking around the dishwasher to make sure another worker was not crossing his path, but there is simply no evidence before the Court that establishes the kitchen was a high-traffic environment for the Court to find it factually similar to *Hudspeth*. Plaintiff's testimony, rather, is that he chose the clear path through the room with the dishwasher because one other person was pushing a cart in the hallway. To the extent that Plaintiff argues that he had no control over his route and no control over the maintenance of the workplace, a prisoner's inability to select the route does not mean the hazard was not an open and obvious condition. *Washington v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-4323, ¶ 18 (10th Dist.) ("[E]ven if [plaintiff's] route was established by [the institution] and his movements may have been somewhat restricted, such does not mean that the hole in the walkway was not an open and obvious condition.").

{¶27} Plaintiff also testified that he had been through the dishwasher room multiple times the morning of his fall and other times in his eighteen months working in the kitchen as well as that he had seen water puddling on the floor in the dishwasher room before. "Attendant circumstances do not include regularly encountered, ordinary, or common circumstances." *Thornsley v. Lafferty's Coin-Op Laundry, LLC*, 2022-Ohio-3907, ¶ 2-3,

46-47 (5th Dist.) (Fifth District Court of Appeals, in affirming the trial court granting summary judgment for the defendant, found that a plaintiff carrying an "approximately 2.5 to 3 feet long and 1.5 foot wide" laundry basket into the laundromat facility is a "regularly encountered, ordinary, and common circumstance" and, as such, did not negate the open and obvious nature of a sidewalk entrance to that facility).

{¶28} Upon review, there is no evidence in the record to create a genuine issue of material fact regarding whether Plaintiff's attention was diverted such that the danger of the hazard was significantly enhanced. Accordingly, there are no attendant circumstances that prevent the application of the open and obvious doctrine.

*Lack of Warning*

{¶29} Plaintiff argues that Defendant did not post any wet floor or caution signs prior to his fall and, in reliance on *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494 (1st Dist. 1996), states that "Ohio courts have found that lack of signage or warnings can preclude summary judgment, even where the hazard may be technically visible (lack of warning signs may constitute breach of duty despite visibility of hazard)." (Plaintiff's Response, p. 8-9).

{¶30} Plaintiff's reliance on *McGuire* for this broad proposition, however, is not well-taken. The *McGuire* court "acknowledged that a store owner may be required to take added precautions despite the obvious nature of a condition when the store owner has reason to expect that the customer's attention may be distracted by goods on display, or that the customer may forget the condition after a lapse of time." *McGuire* at *498, citing *Armentrout v. Associated Dry Goods Corp.*, 1991 Ohio App. LEXIS 24 (1st Dist. 1991). But the *McGuire* court narrowed this retail exception stating "*Armentrout*, however, should not be read so broadly to apply to any and all displays which are customarily encountered in retail settings. If this were true, a jury question would always exist in such cases because the store owner displayed goods for sale and subject to the customer's view. Rather, the exception to the "open and obvious" doctrine discussed in *Armentrout* applies only where the plaintiff offers evidence of particular circumstances rendering a particular display or area of display foreseeably unsafe." *Id.*, citing *Yocono v. Rite Aid Corp.*, 1993

Ohio App. LEXIS 4822 (9th Dist. 1993).[2]   Here, however, the case is clearly distinguishable because Plaintiff's fall does not occur in a traditional retail setting to specifically trigger the added precautions discussed in *McGuire*.  And to the extent that Plaintiff argues that Defendant's failure to maintain the dishwasher in proper working condition would render the area foreseeably unsafe requiring added precautions, it is not well-taken.

{¶31} Plaintiff argues that "[Defendant] is also bound by specific administrative rules that govern maintenance and safety of institutional food service environments[,]" and "[Defendant's] non-compliance with both physical facility and maintenance regulations supports [Plaintiff's] contention that [Defendant] has failed in its duty of care and provides further evidence that this was not an unforeseeable or unavoidable event, but a preventable result of institutional negligence." (Plaintiff's Response, p. 8-9).  Plaintiff specifically alleges the violations of Adm.Code 3717-1-06.4(A)-(B),[3] and Adm.Code 3717-1-04.4(A),[4] resulted in institutional negligence.[5]  (Plaintiff's Response, p. 8-9).

{¶32} Upon review, Plaintiff cannot rely on mere allegations of improper cleaning or repair, but rather must point to specific facts in the evidence before the Court.  *See*

---

[2] *Yocono* at *5 ("Reasonable minds could only conclude from the summary judgment evidence, that if [the plaintiff] had been watching the aisle, he would have seen the Scotch tape display, and would not have collided with it.  Such displays are regularly encountered in retail settings, and, here plaintiff offered no evidence of peculiar circumstances rendering this setting foreseeably unsafe.  The danger was in looking at other activity in the store while continuing to walk.  The activity that diverted [plaintiff's] attention was not designed to do so. . . . [defendant] did not owe [plaintiff] a duty to warn of the Scotch tape display because that display was apparent and obvious and [plaintiff] could have avoided a collision with it using ordinary care under the circumstances.").

[3] Adm.Code 3717-1-06.4(A)-(B) states: "(A) Repairing.  The physical facilities are to be maintained in good repair.  (B) Cleaning – frequency and restrictions.  (1) The physical facilities are to be cleaned as often as necessary to keep them clean.  (2) Except for cleaning that is necessary due to a spill or other accident, cleaning is to be done during periods when the least amount of food is exposed such as after closing."

[4] Adm.Code 3717-1-04.4(A) states in relevant part: "(A) Equipment – good repair and proper adjustment. (1) Equipment will be maintained in a state of repair and condition that meets the requirements specified under rule 3717-1-04 of the Administrative Code and rule 3717-1-04.1 of the Administrative Code."

[5] The Court notes that Plaintiff does not pursue such negligence per se claim, referenced as "institutional negligence," in his Complaint.  *See Tchankpa v. Ascena Retail Group., Inc.*, 2020-Ohio-3291, ¶ 25 (10th Dist.) quoting *Bradley v. Sprenger Enters*, 2008-Ohio-1988, ¶ 8 (9th Dist.) ("A plaintiff cannot fulfill [their] burden under Civ.R. 56 merely by asserting new claims in response to a properly supported motion for summary judgment.").

*Gibbs v. Columbus Metro. Hous. Auth.*, 2012-Ohio-2271, ¶ 19 (10th Dist.) ("Speculation and conjecture, however, are not sufficient to overcome [Plaintiff's] burden of offering specific facts showing that there is a genuine issue for trial."). The presence of a hazard alone does not satisfy this burden. Plaintiff has simply provided no evidence of Defendant's cleaning practices or equipment repair practices to create a dispute of material fact regarding whether the existence of the puddling water is related to either allegation. Plaintiff provides no evidence of the cleaning conducted by Defendant, whether routine or in response to a spill. While Plaintiff alleges that many work orders have been placed in the past related to the dishwasher, none of the work orders are properly before the Court and he provides no other evidence regarding the status of those work orders or the working condition of the dishwasher at the time of his fall. Moreover, Plaintiff testified that the work orders had been for heating issues and water leaks on the other side of dishwasher from where he fell. And even though he had previously seen puddling water on the side where he fell, he did not testify that he submitted any such work orders regarding that issue.

{¶33} Because the Court has already determined that the evidence establishes that the puddling water was open and obvious, the nature of the hazard itself serves as a warning and Plaintiff could have avoided it using ordinary care under the circumstances. *See, e.g.*, *Williams*, 2005-Ohio-2669 at ¶ 8. Accordingly, Defendant's lack of warning signs in the kitchen does not prevent the application of the open and obvious doctrine.

*Notice*

{¶34} Plaintiff argues that "when a hazardous condition is recurring, known, or the result of institutional negligence, constructive notice may defeat the open and obvious doctrine." (Plaintiff's Response, p. 9). Plaintiff states that "the leak was a known defect in the kitchen . . . [and] the recurrence and pattern of complaints give rise to constructive notice, which satisfies the burden under Ohio negligence law." (Plaintiff's Response, p. 10).

{¶35} "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Watson v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1017, ¶ 9 (10th Dist.). "Actual notice is notice

obtained by actual communication to a party." *Barnett v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-4737, ¶ 23 (10th Dist.). "Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-4736, ¶ 14 (10th Dist.).

{¶36} Plaintiff appears to concede the argument for actual notice, nonetheless there is no evidence before the Court that Defendant had actual notice of the puddling water that caused Plaintiff's fall. Upon review, the Court finds that Defendant did not have constructive notice either.

{¶37} As previously discussed, there is no evidence before the Court of the status of the work orders Plaintiff alleges and even if so, there is no evidence of the working condition of the dishwasher leading up to Plaintiff's fall. Plaintiff's uncontroverted testimony before the Court shows that work orders were related to heating issues and puddling water on the opposite side of the dishwasher from where Plaintiff fell. Moreover, although Plaintiff had previously seen puddling water in the area where he fell when the dishwasher was running, he never communicated such issues with Defendant and the dishwasher was not running at the time of his fall. Moreover, because Plaintiff had not previously seen puddling water on the morning of his fall, he fails to establish that the puddling water was on the floor long enough to construe constructive notice against Defendant, especially since Plaintiff does not provide any evidence regarding Defendant's cleaning procedures. Accordingly, Plaintiff does not specifically articulate any facts from the evidence provided to create a genuine issue of material fact related to Defendant's notice prior to his fall. *See* Gibbs at ¶ 19.

{¶38} Accordingly, Plaintiff has not established the existence of a genuine issue of material fact meeting the reciprocal burden pursuant to Civ.R. 56(E) regarding whether Defendant breached a duty owed to Plaintiff, the puddling water was an open and obvious danger at the time of the fall, or any exceptions preclude the application of the open and obvious doctrine. Therefore, Defendant is entitled to judgment as a matter of law and granting of summary judgment in its favor.

**Conclusion**

{¶39} Defendant has met its initial burden, pursuant to Civ.R. 56(C), by showing that there are no genuine issues of material fact regarding whether Defendant breached

a duty owed to Plaintiff and whether the puddling water was an open and obvious danger at the time of the fall.  Plaintiff, however, has failed to meet his reciprocal burden, pursuant to Civ.R. 56(E), setting forth specific facts showing that there is a genuine issue for trial. Even construing the evidence in a light most favorable to Plaintiff, he has failed to demonstrate the existence of a genuine issue of material fact regarding whether Defendant breached a duty owed to Plaintiff, the puddling water was an open and obvious danger at the time of the fall, or any exceptions preclude the application of the open and obvious doctrine.

{¶40} For these reasons, Defendant's Motion for Summary Judgment is GRANTED.


_____
LISA L. SADLER
Judge

[Cite as *Welch v. Ohio Dept. of Rehab. & Corr.*, 2025-Ohio-2514.]

| DAVID F. WELCH | Case No. 2023-00655JD |
| --- | --- |
| Plaintiff | Judge Lisa L. Sadler<br>Magistrate Adam Z. Morris |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

**IN THE COURT OF CLAIMS OF OHIO**

{¶41} A non-oral hearing was conducted in this case upon Defendant's Motion for Summary Judgment.

{¶42} For the reasons set forth in the Decision filed concurrently herewith, Defendant's Motion for Summary Judgment is GRANTED. Judgment is rendered in favor of Defendant. All previously scheduled events are VACATED. Court costs are assessed against Plaintiff. The Clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

LISA L. SADLER
Judge

**Filed June 25, 2025**
**Sent to S.C. Reporter 7/17/25**